UNITED STATES DISTICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:07-cv-174-H

LILIANA MARTINEZ-HERNANDEZ, and )
ULDA APONTE, both individually and behalf )
of all other similarly situated persons, )
)
          Plaintiffs, )
) **O R D E R**
     v. )
)
BUTTERBALL, LLC, )
)
         Defendant. )

This matter is before the court on fifteen pending motions.[1]  All motions have been fully

briefed, and a hearing on these motions was held before the undersigned on March 31, 2010.

The motions referred to the undersigned and addressed in this order are filed at docket entry

numbers:  285, 330, 349, 354, 319, 332, 345 (as amended by the document at 380-2),[2] 380, 334,

336, 315, 351, 338, 327, and 343.  Each motion will be addressed in turn below.  In an effort to

organize the many disputes for purposes of this Order, the court has broadly categorized most of

the motions as disputes relating to information sharing, depositions, and experts.  The court will

examine each "category" in turn.  Finally, the court will address any necessary modifications to

the Scheduling Order occasioned by the parties' disputes and the rulings herein.

## I.      Information Sharing Disputes

---

[1] Only fourteen motions were included in the Order setting the hearing.  Plaintiffs filed their motion at DE-380 after
the Order and before oral argument.  This motion was not yet ripe at the time of the hearing, although the relief
sought by Plaintiffs in this motion overlaps with the issues that were before the court at the time of the hearing.  The
time for Butterball to respond has expired.  Thus, the motion at DE-380 is now ripe, and the court will address it in
this Order.
[2] As discussion below indicates, the court herein grants Plaintiffs' motion [DE-380] to amend their motion originally
filed at DE-345.

### A. Plaintiffs' Contempt Motions [DE-285, DE-330]

#### 1. Four Left Behind Documents [DE-285]

In Plaintiffs' first motion [DE-285] for contempt for failure to comply with the undersigned's Order of December 18, 2009, Plaintiffs contend that Butterball failed to produce any "non-privileged documents" relating to its "knowledge of, good faith implementation of, or disregard of the FLSA and state wage and hours law," as directed in the undersigned's Order at DE-283, when it refused to produce four documents that ConAgra left behind at the Carthage, Missouri, poultry processing plant (the "left behind documents") when Butterball purchased the plant. Apparently, ConAgra attorneys prepared these documents for ConAgra, and they related to its internal investigation of donning and doffing compensation issues. The parties do not dispute that these four documents (and others like it) *were* privileged attorney-client communications. Butterball included these documents, among others, on its privilege log [DE-254-6] in this litigation. However, Plaintiffs point out that when ConAgra left these four documents in the Carthage plant without any agreement for Butterball to keep them confidential, ConAgra waived its privilege with respect to these documents. Certainly, one element to assert the privilege is that the client has not waived such privilege. *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998). Butterball, the party asserting privilege, must establish this element. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).

Butterball did not directly address the waiver issue in its opposition; however, at the hearing its counsel asserted that the documents were privileged because they were on the privilege log. The court is not persuaded. A client may waive its privilege expressly or through conduct (an implied waiver). *Hawkins*, 148 F.3d at 383. A disclosure, such as to a third party, which "violates the confidentiality that constitutes the essence of the attorney-client privilege"

waives the privilege as to the specific information disclosed. *Id.* at 384. Here, ConAgra failed to maintain these four privileged documents in a confidential manner, albeit inadvertently it seems. Thus, the court concludes that ConAgra waived the privilege with respect to these "left behind" documents. In finding in favor of Plaintiffs, however, the court will decline to hold Butterball in contempt because these documents we*re arguably* privileged, and thus not clearly within the terms of the undersigned's previous order requiring production of "non-privileged documents."[3] Accordingly, the court hereby **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Treat as Contempt Butterball's Failure to Comply with Discovery Order [DE-285], and the court hereby **DIRECTS** Butterball to produce the four "left behind" documents to Plaintiff.

### 2. Maxwell Farms Interrogatory [DE-330]

Plaintiffs' second contempt motion [DE-330] for Butterball's failure to comply with the court's Order at DE-283 argues Butterball should have responded to its Interrogatories numbered 18 and 19. These interrogatories essentially seek years of advice or information that Maxwell Farms, LLC, had regarding off-the-clock wage issues. The court finds that Plaintiffs' motion is not well-taken, and any motion seeking information from Maxwell Farms should be directed towards Maxwell Farms. Indeed, the parties stipulated early in this case that although Maxwell Farms, LLC, would be voluntarily dismissed as a defendant, Maxwell Farms agreed "that the scope of Plaintiffs' right to conduct discovery as to it continues to be the same as if it were a party in this action." Stip. of Dismissal, ¶ 3. Indeed, Plaintiffs served these same interrogatories on Maxwell Farms in 2008, and Maxwell Farms answered them in February 2008 [DE-254-8].

---

[3] Moreover, a simple reading of the undersigned's previous Order [DE-283] might have lead Butterball to not disclose these left behind documents. The Order states at page twelve, "The ConAgra documents are not discoverable." The court only made this statement with regards to whether Butterball had waived privilege over the ConAgra documents by asserting the good faith defense. Thus, Butterball was in error to rely on that statement out of context. The previous holding still stands with regards to ConAgra's privileged documents generally, and for which there was no inadvertent waiver of confidentiality.

Essentially, Maxwell Farms noted its objection to the overly broad timeframe of the request and answered that it had no responsive information. Regardless, Butterball cannot be held in contempt for failing to answer discovery that is properly directed at another entity. The court has duly considered Plaintiffs' arguments regarding the complex corporate relationships between Maxwell Farms and Butterball, and the overlapping corporate officer, Walter Pelletier. Nonetheless, the court (1) will respect the parties' stipulations that Maxwell Farms would respond to discovery directly as if it were still a party; and (2) is not persuaded by Plaintiffs' arguments offered on brief and at the hearing that Butterball has any duty to answer discovery on behalf of Maxwell Farms. Accordingly, Plaintiffs' Second Motion to Treat as Contempt Butterball's Failure to Comply with Discovery Order [DE-330] is hereby **DENIED**.

### B. Plaintiffs' Motion to Compel [DE-349]

Plaintiffs also move to compel Butterball to produce four categories of documents and substantial information regarding the approximately 6,000 class members. [DE-349].

#### 1. Four Categories of Documents

These four categories of documents are as follows:

Human Resources Action Reports ("HRARs"), which apparently are ad-hoc disciplinary write-ups of individual employees. These HRARs may address any reason for employee discipline, including, but certainly not limited to, write-ups for late returns from break. At the hearing, the court perceived Plaintiffs as limiting their request to only those HRARs containing relevant material relating to disciplinary action relating to breaks.

Focus Team Meeting Reports ("FTMRs"): notes from occasional human resources meetings with employees to address employee concerns. These team meetings can relate to any issue in the workplace.

Break time logs that one opt-in plaintiff, Catherine Pickett, stated in deposition that she kept for her supervisor, Mr. Caldwell.

Turkey temperature logs that another opt-in plaintiff, Shamika Morissey, testified she kept at times coinciding with her breaks.

As to the HRARs and FTMRs, Karen Ingram, Butterball's Human Resources ("HR") Manager at the Mount Olive plant, attests that they are not separately maintained or kept in the ordinary course of business, and thus it would be unduly burdensome to search the 6,000 class members' HR files to locate any relevant HRARs and FTMRs. At the hearing, Plaintiffs' counsel clarified that he is only seeking for Butterball to produce any separately-maintained "piles" of such documents that some deposition testimony indicates are kept by one or more HR employees, and also that the 100 or so supervisors at the Mount Olive plant may or may not have kept on an individual basis. Butterball points out that the HRARs and FTMRs were not used by Butterball for any purpose and would only be marginally relevant. The court is persuaded that the HRARs and FTMRs would only contain marginally relevant information (and a lot of irrelevant information). The substantial burden on Butterball to locate all such documents is not justified in light of this finding. Accordingly, the court will not order Butterball to produce these documents.

As to the break time logs of opt-in plaintiff, Catherine Pickett, Butterball offered an affidavit from Karen Ingram indicating that Pickett's supervisor only retained such logs for a week, he only asked employees to keep such logs for a short period of time, and has no such logs in his possession. Ingram Affid. ¶ 10 [DE-367-9]. As to the turkey temperature logs that Morissey kept for her supervisor, Mr. Mitch Moore, Ingram's affidavit merely states "Butterball does not use any pre- and post-break temperature logs for any purpose, including payroll or calculation of work hours." Ingram Affid. ¶ 11. It seems Butterball did not ask Mr. Moore whether he retained any such turkey temperature logs.

The court is persuaded by Plaintiffs' counsel that Butterball could have more diligently satisfied its discovery responsibilities under the Federal Rules of Civil Procedure by offering an affidavit or other information directly from the two supervisors, Lynn Caldwell and Mitch Moore, as to whether they have retained such logs of employees working under their supervision. Thus, the court **DIRECTS** Butterball to (1) inquire directly from supervisors Caldwell and Moore whether they have any logs of the type kept by the opt-in plaintiffs or any other employees under their supervision; (2) offer sworn statements from these two supervisors on this issue; and (3) produce any such logs in these supervisors' possession.

## 2. Departmental Information for All Class Members

Finally, Plaintiffs' motion at DE-349 also seeks to compel Butterball to compile and produce a list of the departments, job assignments, time in each job assignment, supervisor while in each job, *and phone numbers*, for all 6,000 or so opt-out class members. Butterball has already manually compiled this information, less phone numbers, for the 315 or so opt-in class members. Plaintiffs claim they need this same information, plus phone numbers, for the remaining class members in order to find good candidates to provide representative class testimony. Plaintiffs complain that the vast majority of the opt-ins worked less than six months in any department, and of those hundred or so opt-ins who did work longer than six months in a department, they do not represent all shifts across all departments at the Mount Olive plant. Butterball points out it has already given Plaintiffs the last known contact addresses for all 6,000 class members, although not phone numbers, and thus Plaintiffs' counsel, if diligent, could have found representative class witnesses using this information. However, Plaintiffs contend that the list was not useful because the addresses were mostly outdated and the list did not have phone numbers. This dispute is further complicated by Plaintiffs' refusal to disclose its list of trial

witnesses to Butterball because they insist they do not yet have the means to determine who in the class could give representative class testimony.

Having duly considered all the arguments, the court finds that it would not be unduly burdensome to have Butterball re-produce the list of current and/or last known contact information for the 6,000 or so opt-out class members, updating it if Butterball has such information, and including current and/or last known phone numbers when available, and Butterball is **DIRECTED** to do so. Given that information, the court is confident Plaintiffs' counsel will be armed with reasonably sufficient information to locate representative class witnesses. However, given the complexity and time involved in compiling the data, the court finds it would be unduly burdensome on Butterball to develop a list of the departmental and supervisory information for all opt-out class members. Given the court's directive above, Plaintiffs counsel could compile this information themselves when armed with better contact information for the opt-out class members.

In sum, Plaintiffs' Motion to Compel Production of Documents and Answer to Interrogatories [DE-349] is hereby **GRANTED IN PART AND DENIED IN PART** in accordance with the directives and discussion above.

### C. Electronically Stored Information [DE-354]

The next significant dispute between the parties involves Butterball's search for and production of electronically stored information ("ESI") under Rule 34 of the Federal Rules of Civil Procedure. Rule 34 allows a party to request within the scope of Rule 26(b) any:

> electronically-stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data complications— stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form[.]

Fed. R. Civ. P. 34(a)(1)(A). Such requests must be made on items that are "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1).

Butterball has thus far searched for e-mails of a handful of custodians for the exact term "donning and doffing." Butterball seems to concede that it should do more ESI searches. After failed negotiations regarding search terms and parameters, Plaintiffs moved to compel production of ESI [DE-354]. Plaintiffs requested Butterball run sixty-one numbered queries, most of which include multiple search terms, for thirty-plus custodians, encompassing numerous servers, other Butterball plants in addition to Mount Olive, and Butterball's parent companies' servers. *See Plaintiffs' Requested ESI Search*, filed at DE-354-12. Butterball contends that Plaintiffs' search requests for ESI are unreasonable and unduly burdensome. The court concurs. On the other hand, the court concludes that Butterball's proposed ESI search of about eleven search terms [DE-371-3] could be reasonably expanded to search for relevant information without becoming unduly burdensome on Butterball.

At the hearing, the undersigned strongly encouraged the parties to try to come up with a reasonable compromise to this dispute. But counsel indicated they had probably reached a point where they could not come to an agreement.[4] However, it seems they are making progress and Butterball has proposed a list that includes a number of the most relevant of the terms that Plaintiffs had proposed and also what appears to the court to be a reasonable number of search terms. As such, rather than having the court in the difficult position to try to choose search queries that are reasonably targeted to yield discoverable information but are not unduly burdensome on Butterball, the court will direct the parties to do so. Any ESI search should be

---

[4] Plaintiffs' counsel recently filed an update of post-hearing negotiations regarding ESI discovery. The parties have not come to any agreement. DE-389.

sensitive to what Butterball's IT Chief, Ron Wells, has explained in detail is an extremely manual, and individual custodian-based search process.

Moreover, Mr. Wells has explained the *relative* ease of obtaining ESI from current employees, whose data would be active and/or archived, versus the tremendous trouble to search for ESI from employees' data that is only available on back-up tapes. The latter would require recreating the "post office" individually per employee, on a newly-purchased server.[5] The court finds that Butterball has satisfied the showing under Rule 26(b)(2)(B) that any ESI searches on "backup tapes" should be excluded as "not readily accessible because of undue burden or cost."[6] Fed. R. Civ. P. 26(b)(2)(B). Thus, the court will order Butterball to run ESI searches only on reasonably accessible sources, such as active and archived data of network computers.

Accordingly, the court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Compel Production of Electronically Stored Information [DE-354]. The parties are **DIRECTED** to jointly compile a list of twenty-five individual search terms, and Butterball is **DIRECTED** to search reasonably accessible electronic data of relevant custodians (listed below) for those mutually-agreed to terms.

It seems clear that the list of relevant custodians whose electronic data will be searched should include: Gary Lenaghan (Butterball's VP of HR), Keith Shoemaker (Butterball's CEO), Ed Kacsuta (Butterball's CFO), and Karen Ingram (Mount Olive plant HR Manager). Plaintiffs also argue that Gordon and Louie Maxwell should be included in any ESI search. The court disagrees. Although these gentlemen owned Maxwell Farms, the parent company of Butterball

---

[5] On the eve of the hearing, Plaintiffs' counsel filed an affidavit from one of their technology-specialist paralegals regarding his opinion that other software and strategies could be used to greatly simplify the ESI search. However, the court finds Mr. Wells' deposition testimony persuasive and informed and thus reliable.

[6] Of course, it is possible after obtaining some additional ESI that Plaintiffs could show an extremely urgent need for a clearly-identified piece of ESI that may be on a backup tape. *See* Fed. R. Civ. P. 26(b)(2)(B) (noting good cause may be shown for a court order to obtain discovery from ESI that is not reasonably accessible because of undue burden or cost).

(Carolina Turkeys) prior to 2002, they testified at deposition that they do not directly use e-mail and it can be reasonably inferred from their overall testimony that they do not use computers much at all. Given their limited connection with Butterball post-2002 and the great likelihood that no relevant ESI exists for these gentlemen, the court concludes that Gordon and Louie Maxwell should not be on the list of custodians for the ESI search.

As to James Louis Maxwell, Jr., the court finds it to be a closer call. He obtained his ownership interest in Butterball's (Carolina Turkey's) parent company in 2002 and is a Butterball corporate officer, although he manages the "hog side" of operations. However, considering the time-consuming burden on Butterball to search each custodian's data for ESI, and the unlikelihood that James Maxwell, Jr., has any relevant ESI, the court concludes that James Maxwell, Jr., need not be included as a custodian in the ESI search.

As to James Maxwell's peer, Walter Pelletier, however, the court concludes that he should be on the list of relevant custodians. He, like James Maxwell, Jr., is a Butterball corporate officer and has, through marriage, an ownership interest in Butterball's parent company. But more importantly, Mr. Pelletier's responsibilities are essentially running the "turkey side" of operations for Butterball's (majority) parent company, Maxwell Farms.[7] Thus, a search of his ESI is reasonably likely to yield relevant material.

The court also notes that if Dan Blackshear were still employed as Butterball's sales and marketing director, he would likely be a relevant custodian for the ESI search. However, as a former employee, and per Ron Well's general testimony about former employees, Mr. Blackshear's e-mail and other data would not be active or archived and instead would only be available on backup tapes. Assuming this is true, the court will not include him on the list of

---

[7]Although Butterball may assert Walter Pelletier is not within Butterball's control or that it does not have access to his computers/ESI, it seems a difficult position to maintain. Mr. Pelletier appears to be deeply involved in Butterball on behalf of the "ownership group" and also in this litigation.

relevant custodians for the ESI search. However, if Butterball finds Mr. Blackshear's electronic data is reasonably available, Butterball should include him as a relevant custodian for the court-ordered ESI search. Finally, the court declines to include Jerry Godwin, the Smithfield (minority parent company of Butterball) representative in the Butterball operation, in the list of custodians for the ESI search. He is not under Butterball's control or employ, nor is he included in Butterball's IT network.

The court cannot locate any specific discussion as to why the ESI search should include the twenty or so other proposed custodians set forth by Plaintiffs. Absent cause to believe an ESI search for these custodians would be reasonably calculated to lead to relevant information, the court declines to order ESI searches for these other proposed custodians. Thus, in accordance with the discussion above, the court **DIRECTS** Butterball to search for ESI, including e-mails and other data, such as saved documents, of the following custodians:

1. Gary R. Lenaghan
2. Keith Shoemaker
3. Ed Kacsuta
4. Karen Ingram
5. Walter Pelletier

Butterball shall include Dan Blackshear on this list if it finds that his electronic data is reasonably accessible, in accordance with the discussion above.

Moreover, the court declines to have Plaintiffs share in the cost of Butterball's ESI search. Today's ruling allows Butterball to depose Plaintiffs' trial witnesses, which may be many. Plaintiffs argued that if the court allowed such depositions above the nineteen or so Butterball has already taken, Butterball should share in the costs to Plaintiffs to defend these depositions. The court believes these additional burdens and costs imposed upon Butterball for the ESI search and Plaintiffs for the additional depositions essentially offset each other.

### D. Butterball's Motion to Compel [DE-319]

Butterball seeks an order compelling Plaintiffs to respond to its interrogatory requesting Plaintiffs' list of trial witnesses. Butterball would like this list in order to have an opportunity before trial to depose the class members that Plaintiffs will use at trial to provide representative class testimony, and it seeks a court order granting additional depositions[8] and allowing additional time for the depositions. Plaintiffs argue they need the information requested at DE-349 regarding all 6,000 class members before they can fully identify their trial witnesses. It seems that Plaintiffs' initial response in discovery—that the interrogatory was premature—was justified at the time. Butterball indicated in oral argument that Plaintiffs also asked Butterball for its witness list in an interrogatory, and Butterball initially noted it was premature and then supplemented its response with its witness list. The court finds that litigation has reached the stage at which Plaintiffs should reasonably supplement their interrogatory responses with their witness list. The court hereby **GRANTS IN PART AND DENIES IN PART** Butterball's Motion to Compel Discovery [DE-319] and **DIRECTS** Plaintiffs to promptly supplement their response to the subject interrogatory with a list of their currently known trial witnesses and to further supplement their response as additional witnesses become known. Upon such supplementation by Plaintiffs, Butterball may depose each of Plaintiffs' fact witnesses for up to *three hours* each witness.

## II. Disputes Relating to Depositions

### A. Corporate Designee Deposition [DE's-332, 345, 380]

At issue here is whether Plaintiffs are entitled to another corporate designee deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. This Rule allows a party to

---

[8]The Scheduling Order allows twenty depositions per party, and Butterball has taken nineteen depositions thus far of the opt-in Plaintiffs and class members whom it believes supports its defenses.

name an entity as the deponent and "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The organization must then "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf," who must "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). The organization, such as a corporation, has a duty to "prepare the designees so that they may give knowledgeable and binding answers for the corporation," even if the designee does not have personal knowledge of the matter. *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996). A designee must "provide [the corporation's] interpretation of documents and events" and the corporation's "subjective beliefs and opinions." *Id.* And problems with lack of corporate memory "do not relieve a corporation from preparing its Rule 30(b)(6) designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Id.* at 361-62. In sum, a corporation has "a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depos and to prepare them to fully and unevasively answer questions about the designated subject matter." *Great American Ins. Co. of New York v. Vegas Constr. Co.,* 251 F.R.D. 534, 539 (D. Nev. 2008) (citing cases). This obligation can be burdensome, but "this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business." *Taylor* at 362.

Here, Plaintiffs listed the matters for designation with great particularity-listing detailed and numerous matters for the corporate designee deposition of Butterball. Butterball designated two people to speak for the corporation, Karen Ingram from human resources at Mount Olive and Gary Lenaghan, also in human resources, who actually made the recommendation to management to pay employees plug time for the time they spent putting on and removing

13

personal protective gear required in their jobs. Also, Ron Wells was designated and deposed in an IT-related deposition earlier in litigation; Karen Ingram was also deposed earlier in 2008.

Butterball points out that the total time spent in corporate designee depositions was about eighteen hours. Plaintiffs contend that they had to waste a lot of deposition time exploring identified subject matters that the designees could not fully answer. The court is mindful that Butterball's designees fully cooperated in their seven hour depositions. It seems they were able to fully and unevasively give answers as to most of the numerous matters Plaintiffs had identified. However, there were several matters for which the designees did not have knowledge. It seems the knowledge was readily available to the corporation by, for example, asking employees or supervisors about the subject matter. Thus, Butterball could have better prepared its corporate designees in some specific areas Butterball was on notice would be the subject of the depositions. After carefully reviewing the deposition excerpts and voluminous filings in the record on this matter, the court concludes that Plaintiffs are entitled to an additional Rule 30(b)(6) corporate designee deposition, but for a limited time and limited scope. The court strongly counsels Plaintiffs against pursuing lines of questioning that have already been well-covered in previous corporate designee depositions. Butterball is reminded of its rather substantial duty under Rule 30(b)(6) to prepare its designee(s) to give full answers regarding information that is reasonably available to the corporation. Butterball is encouraged to avoid further disputes by explaining to Plaintiffs, if applicable, the efforts made to discover corporate knowledge and why any particular information was not readily available to the corporation.

As to the subject matter for the additional Rule 30(b)(6) deposition, it seems Plaintiffs have gone to some effort to clarify the areas of inquiry that have been previously noticed and for which Butterball's designees demonstrated a lack of knowledge. *See* Plaintiffs' Motion for

Leave to File an Amended Motion to Compel Designation Required by Rule 30(b)(6) [DE-380].

Plaintiffs' proposed Amended Motion, filed March 19, 2010, lists twenty-six subject matters for

an additional Rule 30(b)(6) deposition. The time for Butterball to respond to this motion has

expired, and the motion is ripe. The court hereby **GRANTS** Plaintiffs' Motion for Leave to File

an Amended Motion to Compel Designation Required by Rule 30(b)(6) [DE-380], and Plaintiffs

are **DIRECTED** to promptly file the Amended Motion attached as Exhibit A [DE-380-2] to

Plaintiffs' Motion for Leave to File an Amended Motion to Compel Designation Required by

Rule 30(b)(6).

Butterball's Motion for Protective Order as to Plaintiffs' Supplemental Rule 30(b)(6)

Depositions [DE-332] and Plaintiffs' Amended Motion to Compel Rule 30(b)(6) Designation

Required by Rule 30(b)(6) and for Leave to Depose Butterball Pursuant to Rule 30(d)(1) and

Rule 30(a)(1)(A)(ii) [DE-380-2][9] are hereby **GRANTED IN PART AND DENIED IN PART**.

Plaintiffs are granted leave to depose Butterball's Rule 30(b)(6) designee(s) for a total of up to

**four hours** (aggregate time for one or more Rule 30(b)(6) depositions) in the areas of inquiry

specified in Plaintiffs' Amended Motion to Compel Designation Required by Rule 30(b)(6) and

for Leave to Depose Butterball Pursuant to Rule 30(d)(1) and Rule 30(a)(1)(A)(ii) [DE-380-2].

### B. Fact Witness Deposition Disputes [DE's-334, 336]

Butterball moves to quash the eight deposition notices Plaintiffs served on February 9,

2010. As an initial matter, the court notes that it is not persuaded by Butterball that Plaintiffs'

failure to first exchange availability dates for deponents and counsel before noticing these

depositions warrants prohibiting such depositions. As Plaintiffs pointed out, they would

certainly have rescheduled these depositions to accommodate opposing counsel's and the

---

[9] The Amended Motion deemed filed at DE-380-2 supersedes Plaintiffs' original motion at DE-345. Thus, the Motion at DE-345 is **DENIED AS MOOT**.

deponents' schedules. While failure to consult opposing counsel regarding deposition scheduling prior to noticing depositions and noticing these depositions near the end of discovery are not ideal practices, the court does not find cause to prohibit the depositions on those facts alone. Rather, the court will examine each deposition notice in turn to determine if Butterball is entitled to quash the deposition and to issuance of a protective order.

### 1. "Non-Butterball Deponents" [DE-334]

Butterball's Motion to Quash Deposition Notices to Non-Butterball Deponents and for Issuance of Protective Order [DE-334] applies to the deposition notices for Gordon and Louis Maxwell, Dan Blackshear, and Jerry Godwin. The Maxwells have already been deposed in similar pending litigation in *Helmert v. Butterball* before the Eastern District of Arkansas. Butterball made their deposition transcripts available to Plaintiffs. Deposition excerpts in the record establish that the Maxwells are the original owners of Maxwell Farms (now the fifty-one percent majority owner/parent company of Butterball) and founders of Carolina Turkeys, Butterball's predecessor. They are both now in their eighties. In 2002, they divested all their interest in Maxwell Farms to their children, and they continue to own one or two related (but independent) businesses, namely Goldsboro Milling. They maintain offices at Goldsboro Milling's building in Goldsboro, North Carolina. Their offices are adjacent to their respective son and son-in-law's offices, Walter Pelletier (also known as "Gator") and James Maxwell. The older Maxwells still take an interest in the company they founded, so they go to some meetings of Butterball's ownership group. They testified that they rarely talk at these meetings, have no official role, are not asked for advice, and do not remember discussion about the donning and doffing decision or this litigation at Butterball "ownership group" meetings.

Plaintiffs argue, *inter alia*, that the older Maxwells' testimony is needed regarding Butterball's understanding of the FLSA and NCWHA. Specifically, Plaintiffs want to question the Maxwells about their knowledge of two wage and hour lawsuits against Maxwell Farms and/or Carolina Turkeys in 1993 and 1994, involving an FLSA claim of illegal wage deductions and an NCWHA claim for work performed "off the clock." Although the ultimate relevance, weight, and admissibility of any such knowledge or lack thereof by the Maxwells regarding the 1993 and 1994 litigation may be at issue later, the court finds that this line of questioning is at least relevant to the issues in this case and thus within the scope of discovery under Rule 26(b)(1). However, considering their extensive depositions already given (in *Helmert*) on other matters relevant to this action, the court finds good cause to narrowly limit the scope of the Gordon and Louis Maxwell's depositions to the aforementioned 1993 and 1994 litigation,[10] and also to limit the duration of these depositions as specified below.

Butterball also moves to quash [DE-334] the deposition of Dan Blackshear, who was until recently the President of Sales and Marketing for Butterball. Plaintiffs were unaware at the time of service of their notice that Mr. Blackshear was no longer a Butterball employee. Considering Butterball no longer employs Mr. Blackshear, it appears Plaintiffs will have to subpoena him as a non-party witness pursuant to Rule 45. In order to facilitate this process, Butterball is **DIRECTED** to provide Plaintiffs with the current address, phone number, and other relevant contact information for Mr. Blackshear.

Finally, Butterball seeks to quash the deposition of Jerry Godwin because he is not a managing agent of Butterball. [DE-334]. The court concurs. Rather, Mr. Godwin is President of Murphy Brown, LLC, the subsidiary of Smithfield Foods that owns forty-nine percent of Butterball. Plaintiffs contend their deposition notice for Mr. Godwin and served upon Jackson

---

[10] The 1993 and 1994 lawsuits are more clearly identified by Plaintiffs in their Opposition at DE-364, p.6.

Lewis attorneys satisfies the requirement of the Stipulation of Dismissal entered by Order on August 3, 2007, in which Smithfield Foods "agree[d] that the scope of Plaintiffs' right to conduct discovery as to it continues to be the same as if it were still a party in this action." [DE-18, ¶ 4]. Plaintiffs' argument makes some sense because the Stipulation of Dismissal designated counsel at Jackson Lewis (also Butterball's current counsel) as the service party for Smithfield Foods. Plaintiffs contend they properly served Jackson Lewis attorneys as counsel *for Smithfield Foods* with the deposition notice for a managing agent of Smithfield Foods, and thus, Jerry Godwin is subject to deposition.

The court is a little wary that the Godwin notice did not clarify that it was any different from the other deposition notices served on *Butterball*. *See* Notice at DE-335-2. However, the legal argument is sound. Smithfield Foods has agreed that Plaintiffs can conduct discovery upon it as if it were still a party, and that Jackson Lewis would be their attorney of record. There seems to be no dispute that Mr. Godwin can be considered either an officer or a managing agent of Smithfield Foods. Thus, the court finds no cause to quash Mr. Godwin's deposition notice. However, the court is concerned about Mr. Godwin's apparent limited involvement in matters relevant to this action, and undue burden upon the deponent, and will thus limit the deposition's scope and duration as specified below.

## 2. Butterball Deponents [DE-336]

Butterball also seeks to quash the depositions of Keith Shoemaker, Butterball's President and CEO, Walter Pelletier, Butterball's Corporate Secretary/Treasurer, and Ed Kascuta, Butterball's CFO. Plaintiffs would like to depose these "corporate decision makers" regarding their knowledge of the FLSA and NCWHA, as it would be directly relevant to Butterball's good faith defense to liquidated damages. Butterball contends that these additional deponents will be

duplicative, cumulative and unnecessary, because Butterball's corporate designees have already been extensively deposed on everything related to the donning and doffing policy decision. While certainly Butterball must provide corporate witnesses that can speak for the corporation, the court does not believe the Rule 30(b)(6) process should be used as a shield to prevent legitimate depositions of other corporate decision makers or key players. Here, Plaintiffs point out there is some record evidence that Ed Kacsuta, Butterball's CFO, tracked the financial impact of wage and hour violations and corresponded about plug time pay. Walter Pelletier, too, has a key role in managing the turkey operations for Maxwell Farms, Butterball's majority owner/parent company, and apparently he was present at the meeting with the "ownership group" in which the plug time decision was made. Moreover, the court finds Plaintiffs are entitled to ask Butterball's President and CEO, Keith Shoemaker, what he knew or may have known about the FLSA and NCWHA, as his (and other corporate officers') knowledge may be imputed to the corporation and would be relevant to Butterball's good faith defense. Thus, the court will allow these three depositions to go forward, but the scope and duration of these depositions must be limited in order to protect against cumulative, oppressive, or harassing discovery.

In accordance with the discussion above, Butterball's Motion to Quash Deposition Notices of Non-Butterball Deponents and for Issuance of Protective Order [DE-334] is hereby **GRANTED IN PART AND DENIED IN PART**, as follows:

1. Plaintiffs may depose Gordon and Louis Maxwell for up to **one hour** each regarding their knowledge of two wage and hour lawsuits against Maxwell Farms and/or Carolina Turkeys in 1993 and 1994.

2. Plaintiffs' deposition notice of Dan Blackshear is hereby **QUASHED**. Butterball is **DIRECTED** to provide Plaintiffs with the current address, phone number, and other relevant contact information for Mr. Blackshear.

19

3. Plaintiffs may depose Jerry Godwin for up to **two hours** regarding Butterball's donning and doffing decision and other closely-related matters thereto.

Likewise, Butterball's Motion to Quash Deposition Notices to Keith Shoemaker, Walter Pelletier, and Ed Kacsuta, and for Issuance of Protective Order [DE-336] is hereby **GRANTED IN PART AND DENIED IN PART** such that Plaintiffs may depose Keith Shoemaker and Ed Kascuta for up to **two hours,** and Walter Pelletier for up to **four hours**, on matters closely-related to Butterball's good faith defense and their own knowledge of Butterball's pay policy for employee time spent donning and doffing personal protective equipment.

## III.  EXPERT AND RELATED DISPUTES

### A.  Butterball's Motion for Protective Order [DE-315]

Butterball seeks a court order preventing Plaintiffs from conducting a second inspection of its vast Mount Olive facility.  [DE-315].  Plaintiffs conducted a one-day inspection of the 675,000 square foot facility on January 12, 2010, for approximately twelve hours, with three counsel and two videographers.  Plaintiffs noticed another inspection for February 25, 2010.  It appears Plaintiffs have two reasons for the second inspection:  (1) to observe and film discrete areas of the plant that it could not cover in the previous inspection due to the sprawling nature of the plant; and (2) to allow an expert in time-motion studies, Dr. Robert G. Radwin, to observe the plant so that he may provide rebuttal testimony to Butterball's expert testimony by Dr. Alvarez on a time-motion study he conducted at the Mount Olive plant.

Butterball objects to this second entry and inspection on essentially two distinct grounds: (1) the court should limit another inspection under Rule 26(b)(2)(C) because it would be cumulative and duplicative and Plaintiffs already had ample opportunity to make necessary observations and video recordings of the plant; and (2) in any event, the Scheduling Order does not provide for expert rebuttal reports and, thus, Plaintiffs are precluded from filing any such

report and conducting an inspection by any rebuttal expert. Butterball also argues that even if the court permitted Plaintiffs rebuttal expert to testify, any such testimony would constitute affirmative evidence rather than rebuttal evidence.

At the hearing, Plaintiffs' counsel, Mr. Willis, clarified that they do not have any plans to conduct a time-study or offer any expert report on time-studies. Rather, Plaintiffs simply retained Dr. Radwin to rebut Dr. Fernandez's report, and, they argue, Dr. Radwin cannot effectively do so if he does not at least see first-hand how the plant works. Mr. Willis acknowledged that Plaintiffs may not offer affirmative expert testimony after failing to disclose any expert by their December 30, 2009, deadline. Moreover, Plaintiffs' counsel pointed out at the hearing that they informed Butterball's counsel last December, before their expert deadline ran, that they intended to offer a *rebuttal* expert, and Butterball lodged no objection until the dispute arose over a second inspection.

### 1. Areas Not Previously Covered

As to Butterball's first line of objections (cumulative and duplicative), the court has reviewed the affidavits offered by Plaintiffs' counsel, Mr. Getman, and one of the videographers. Mr. Getman points out a couple of specific areas and work crews at the plant that they were not able to view and/or record in one twelve-hour workday. *See* DE-323-5 at ¶ 4. The court finds Plaintiffs' need for a limited second inspection to be reasonable only to the extent that Plaintiffs could carefully avoid duplication of their efforts from the first inspection. Thus, the court will allow Plaintiffs to conduct another inspection of the Mount Olive plant for up to **FOUR HOURS,** for the limited purpose of allowing Plaintiffs to observe and film the distinct areas and/or work crews that they were not able to observe and file on their first inspection. Plaintiffs

are **DIRECTED** to attempt to avoid duplication of efforts from their previous inspection, such as to avoid filming work crews and areas for which they already have acceptable footage.

## 2. Application of Rule 26(a)(2)(C)(ii)'s Deadline as to Entry of Dr. Radwin

The closer question is whether a second inspection is permissible for another purpose: to allow entry of Plaintiffs' proposed rebuttal expert, Dr. Radwin. The issue of whether Plaintiffs are allowed to offer any expert rebuttal testimony must be resolved in order to answer this question. This same issue arises in Plaintiffs' Motion to Extend Time to Prepare a Rebuttal Expert Report on Statistical Invalidity of Defendant's Expert Report [DE-351].

The issue boils down to whether Rule 26(a)(2)(C)(ii), which allows disclosure of evidence contradicting or rebutting another party's expert testimony within thirty days after the other party's disclosure, applies here as a default rule where the scheduling order specifies dates for expert disclosure, but is silent on the issue of expert rebuttal testimony. The Rule states in relevant part:

> *Time to Disclose Expert Testimony*. A party must make these disclosures at the times and in the sequence that the court orders. *Absent a stipulation or a court order,* the disclosures must be made:
>
> > (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party . . . , within 30 days after the other party's disclosure.

Fed. R. Civ. P. 26(a)(2)(C)(ii) (emphasis added). Here, there is a court order generally scheduling deadlines, but it does not specifically address a rebuttal expert disclosure deadline. The court cannot locate any controlling precedent on this issue. Rather, there is caselaw on point supporting both Plaintiffs' and Butterball's positions.

After examining various authorities, the court finds discussion in a recent case from the Southern District of New York, *SEC v. Badian*, 2009 WL 5178537 (S.D.N.Y. 2009), to be

instructive. The *Badian* court discussed this exact issue at length, and examined numerous cases across jurisdictions supporting both sides of this issue. In *Badian,* the court allowed the party to utilize Rule 26(a)(2)(C)(ii)'s deadline to file a rebuttal expert report when the scheduling order was silent on such a deadline. However, it was important to the *Badian* court that the plaintiff had moved for an extension of Rule 26(a)(2)(C)(ii)'s thirty-day deadline *before* the deadline would have expired. Also significant to the court's reasoning was that the scheduling order there set an "expert discovery" deadline that was 105 days after the last expert disclosure deadline; implicitly, then, the *Badian* scheduling order allowed time for expert depositions and, arguably, rebuttal expert disclosure within the thirty days allowed by Rule 26(a)(2)(C)(ii). *Badian*, 2009 WL at *5-6.

Other cases cited by the *Badian* court also support the proposition that Rule 26(a)(2)(C)(ii)'s deadline may apply as a default deadline where the scheduling order does not specify a rebuttal expert deadline. *See Syringe Development Partners L.L.C. v. New Medical Technology, Inc.*, 2001 WL 403232 (S.D. Ind. 2001), *36 n. 7 (allowing Rule 26(a)(2)(C)(ii)'s application where case management plan had expert disclosure deadline but did not set deadlines for rebuttal witness disclosure); *City of Gary v. Shafer*, 2009 WL 1370997, *2-3 (N.D. Ind. 2009) (same); *Aircraft Gear Corp. v. Marsh*, 2004 WL 1899982, *5 (N.D. Ill. 2004) (same); *see also Mayou v. Ferguson*, 544 F. Supp. 2d 899, 901 (D.S.D. 2008) ("I disagree with any decision to the effect that, where the stipulation and the scheduling order are silent, such [silence] serves to prohibit any designation of a rebuttal expert being made by the plaintiff. I interpret Rule 26 to allow [default application of Rule 26(a)(2)(C)(ii)'s deadline]."); *cf. Wegener v. Johnson,* 527 F.3d 687, 691 (8th Cir. 2008); *Lindner v. Meadow Gold Dairies, Inc.*, 249

F.R.D. 625, 636 (D. Haw. 2008); *Johnson v. Big Lots Stores, Inc.*, 253 F.R.D. 381, 383- 85 (E.D. La. 2008).

While the court has considered the caselaw which supports Butterball's proposition that Rule 26(a)(2)(C)(ii) does not allow expert rebuttal designation where the scheduling order is silent on the topic, the court finds that such cases are either distinguishable or not compelling. For example, in *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306 (M.D.N.C. 2002), the district court found that Rule 26(a)(2)(C)(ii)'s deadline did not apply because the scheduling order already expressly stated a deadline for expert rebuttal disclosures, and plaintiff's designation was well past the order's deadline. However, even after this finding, the court allowed the plaintiff to present the one expert report that would have been timely had Rule 26(a)(2)(C)(ii) been applicable (although it did impose attorney's fees and defendant's deposition costs on plaintiff as a sanction for violating the scheduling order). *Id.* at 312-13. Thus, *Akeva* does not stand for a hard and fast rule excluding rebuttal expert designation where the scheduling order is silent.

The court finds the more persuasive line of cases to be the ones discussed above, which allow some flexibility to litigants to make rebuttal expert designations within thirty days after another party's expert disclosure where there is a scheduling order that is silent on the topic. The court finds this conclusion to be a reasonable interpretation of the language of Rule 26(a)(2)(C), which states the thirty day deadline applies "[a]bsent a stipulation or court order." Here, there is a court order on scheduling, but not specifically addressing expert rebuttal disclosures. Butterball interprets the Rule's language as *requiring* exclusion of any expert rebuttal designation when a scheduling order is in place and silent on the issue. But the court finds such interpretation is not required by the language of the Rule or by any controlling or persuasive authority.

However, given the nature of time motion studies, the court finds it highly implausible that the "rebuttal" expert of Plaintiffs could offer true rebuttal testimony. As Butterball has pointed out, it is difficult to ascertain what Plaintiffs' expert could state (that is of any value to Plaintiffs) to "rebut" the time motion studies of Dr. Fernandez that would not itself be affirmative evidence. To be admissible as rebuttal evidence under Rule 26, the evidence must "contradict or rebut evidence on the same subject matter." In order to contradict the time-motion observations of Dr. Fernandez, Plaintiffs' proposed expert would have to make his own observations and time analysis. In fact, that is exactly why Plaintiffs contend they need Dr. Radwin to view the Mount Olive plant. Plaintiffs had an opportunity to designate their own affirmative expert to conduct time-motion studies and to have that expert view the plant on their first inspection. They have missed their opportunity. It was certainly no surprise to them that Defendants would use an expert to conduct time-motion studies, and Plaintiffs could have had Dr. Radwin conduct his own time-motion studies. It seems Plaintiffs would like to get their expert into the plant to conduct some abbreviated observations and time analysis, in order to present an alternate expert opinion on the time it takes Butterball employees to don and doff personal protective gear. The court does not want to encourage this kind of back-door attempt to get in expert testimony. And thus, although there is certainly support in the case law for the default timing for expert rebuttals of Rule 26 to be available for appropriate expert rebuttal testimony, the court finds that Dr. Radwin's testimony, if allowed, would not be in the nature of true rebuttal testimony. Accordingly, the court will not allow Plaintiffs' proposed rebuttal expert, Dr. Radwin, to be present for the second inspection of the Butterball plant.

However, it appears that Plaintiffs' other proposed rebuttal expert, a professor of statistics discussed in Plaintiffs' Motion to Extend Time to Prepare a Rebuttal Expert Report on Statistical

Invalidity of Defendant's Expert Report [DE-351], would be giving a report in the nature of rebuttal testimony. Plaintiffs made their motion within the thirty days following Butterball's expert disclosure on January 29, 2010. Plaintiffs' proposed expert apparently had medical problems delaying him from getting a report done by the March 1, 2010, deadline computed by Plaintiffs. Defendants would not agree to a short extension because they did not believe such rebuttal expert designation was permissible, as addressed above. Having concluded that rebuttal expert designation is permitted per Rule 26(a)(2)(C)(ii)'s deadline, the court finds good cause exists to allow a short amount of time for Plaintiffs to make this designation.

In accordance with the discussion herein, Butterball's Motion for Protective Order [DE-315] is hereby **GRANTED IN PART AND DENIED IN PART,** and the parties are **DIRECTED** to schedule and conduct a second inspection of up to four hours total at Butterball's Mount Olive facility forthwith; Butterball's Motion for Leave to File Reply Brief in Support of Motion for Protective Order [DE-343] is hereby **DENIED** in accordance with the Local Rules and because the court finds the issues are adequately represented in the materials before the court; Plaintiffs Motion to Extend Time to Prepare a Rebuttal Expert Report on Statistical Invalidity of Defendant's Expert Report [DE-351] is hereby **GRANTED** and Plaintiffs have until **June 21, 2010**, to disclose this expert's rebuttal report; and Plaintiffs' Motion to Extend the Discovery and Expert Deadlines [DE-338] is hereby **GRANTED IN PART AND DENIED IN PART** in accordance with the modified scheduling order set forth below.

## IV.    OTHER DISPUTE

Plaintiffs also move to strike several of Butterball's affirmative defenses asserted in its Amended Answer [DE-327] as insufficiently plead and conclusory. Under Rule 12(f) of the Federal Rules of Civil Procedure, a party may move to strike any portion of a pleading within

twenty-one days of service of the pleading. Fed. R. Civ. P. 12(f). Butterball filed its original Answer on June 4, 2007. [DE-11]. It filed its Amended Answer [DE-296] on January 21, 2010, in response to the court Order [DE-293] granting Butterball leave to amend its Answer *only* with regards to the temporal aspect of Butterball's asserted good faith defense. With this minor change, the Amended Answer is nearly verbatim identical to Butterball's original answer filed in 2007. Plaintiffs' motion to strike is asserted broadly against numerous affirmative defenses plead by Butterball over two years ago; the motion is not targeted to address the very minor change made in the Amended Answer. As such, Plaintiffs' time period in which to assert the present motion expired over two years ago. Plaintiffs' motion to strike is untimely. Plaintiffs' Motion to Strike Affirmative Defenses Alleged by Defendant [DE-327] is hereby **DENIED**.

## V.  SCHEDULING

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Discovery closed on February 26, 2010, shortly after the majority of these contentious motions were filed. In the Order setting the hearing on these motions, the undersigned extended the dispositive motions deadline to April 19, 2010. The trial is currently scheduled for Judge Howard's August 16, 2010, term of court.

Because of the many disputes that arose late in discovery, the parties on both sides seek more time, depending in part on how the court resolves some of the present disputes. Plaintiffs have moved to extend discovery to sixty days beyond the court's ruling in these matters, and then to allow them forty-five days after discovery in which to provide expert rebuttal reports. [DE-338]. Likewise, Butterball's Motion to Compel [DE-319] originally sought sixty days beyond the February 26, 2010, discovery deadline to depose trial witnesses identified by Plaintiffs, which may be quite numerous. Butterball's opposition to Plaintiffs' Motion to

Compel ESI Discovery [DE-371] further indicates it requests additional discovery time in which to conduct any ESI search that the court may order. And, of course, the various rulings herein certainly require that the parties have more time in discovery to find and exchange information, do another inspection, and conduct depositions as ordered. The court finds that good cause exists for an extension of the discovery period and a corresponding adjustment of the post-discovery deadlines. However, considering the substantial time already allowed for discovery, the court will extend discovery in a limited manner as follows:

(1) Discovery is extended for the limited purposes of allowing the parties to execute the directives of this Order. All discovery will be concluded by **August 16, 2010;**

(2) The rebuttal report from Plaintiffs' expert on statistics (identified in DE-351) is due by **June 21, 2010;**

(3) The parties are granted leave to take the additional depositions as set forth in this Order;

(4) All potentially dispositive motions are due by **September 16, 2010**;

(5) The trial of this matter is continued to Judge Howard's civil term beginning on **February 14, 2011**.

This the 21st day of May, 2010.

DAVID W. DANIEL
United States Magistrate Judge