IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No.: 5-07-CV-00174-H

| | |
|---|---|
| LILIANA MARTINEZ-HERNANDEZ and ULDA APONTE, both individually and behalf of all other similarly situated persons, | ) ) ) ) |
| Plaintiffs, | ) |
| v. | ) ) |
| BUTTERBALL, LLC, | ) ) |
| Defendant. | ) ) |

**PLAINTIFFS' MEMORANDUM SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO THE GOOD FAITH AND SOME OTHER AFFIRMATIVE DEFENSES
ALLEGED BY DEFENDANT**

**I. STATEMENT OF THE CASE**

The plaintiffs adopt and incorporate by reference the statement of the case that is set forth in

the published opinion of this Court. *Martinez-Hernandez v. Butterball, LLC*, 578 F.Supp.2d 816,

817-18 (E.D.N.C. 2008).

**II.     STATEMENT OF RELEVANT FACTS**

On April 2, 2007, Plaintiffs filed this civil action as a class action complaint under the

NCWHA and a collective action under the FLSA against, *inter alia*, Butterball, LLC in the

General Court of Justice, Superior Court Division, for Wayne County, North Carolina. DE-1 at

2-33. In the complaint, under the NCWHA, they sought leave to represent all production workers

who had been employed by Butterball, LLC or its predecessors-in-interest from for any pay

period ending in the time period from April 2, 2005 through the date on which judgment is

1

entered in this action. DE-1 at 2-33. In that same complaint, the plaintiffs sought leave to represent all of those production workers in connection with FLSA and NCWHA claims for uncompensated work in the form of donning and doffing and post-donning and pre-doffing walking and waiting time. DE-1 at 2-33. Under the FLSA, Plaintiffs sought leave to represent in a collective action under 29 USC § 216(b) all production workers who had been employed by Butterball, LLC or its predecessors-in-interest for any pay period ending in the time period from April 2, 2004 through the date on which judgment is entered in this action who filed a timely Consent to Sue required by 29 U.S.C. § 216(b). DE-1 at 2-33.

On May 11, 2007, defendant Butterball, LLC, *inter alia*, removed this action to this Court. DE-1 (Notice of Removal). On May 17, 2010, the plaintiffs filed an Amended Complaint in which they renewed the class and collective action claims described in ¶¶2-4 above under the Federal Rules of Civil Procedure. DE-8. By Stipulated Order Regarding Dismissal of Defendants Other Than Butterball, LLC, defendant Butterball, LLC accepted:

> "responsibility for the operation of the turkey processing facility located at 1628 Garners Chapel Road, Mt. Olive, North Carolina 28365, with respect to all time periods relevant to all claims that have been asserted in this action by Plaintiffs for themselves and on behalf of the proposed classes of persons employed at the turkey processing facility identified above, as such classes are identified more fully in the Amended Complaint. In particular, Butterball, LLC accepts responsibility for the employment policies and pay policies that have been applied to Liliana Martinez-Hernandez and Ulda Aponte, and similarly-situated persons employed at the turkey processing facility identified above, at all times since March 30, 2004. Butterball, LLC agrees that in its defense in this action, it will not assert that Maxwell Farms, LLC, Smithfield Foods, Inc., or any of the entities identified in the caption other than Butterball, LLC should be held responsible or liable instead of or in addition to Butterball, LLC for any of the employment policies or pay policies alleged in the Amended Complaint as to Plaintiffs or similarly-situated persons at the turkey processing facility identified above."

DE-18 at 2 (¶2).

From at least January 1, 2004 through December 3, 2009, plaintiff Mercedes Tabora-Sagastume a/k/a Ulda Aponte was employed without interruption by Carolina Turkeys and then Butterball, LLC as a production worker on the night shift in the ready-to-eat (RTE) side of the defendant's non-union turkey processing plant located on Garner Chapel Road in Duplin County, North Carolina. *See* Plaintiff's Exhibit 26 attached (Sixth Sworn Declaration of Ulda Aponte, ¶¶3-4). From September 25 to November 3, 2006, plaintiff Liliana Martinez-Hernandez ("Martinez-Hernandez") was employed without interruption by Carolina Turkeys and then Butterball, LLC as a production worker in the cutup department at that same plant during its day shift. DE 33-3 at 1-2 (¶3). From December 2008 through the present date, Martinez-Hernandez has been continuously employed by Butterball, LLC without interruption at that same plant. DE 236-3 at 1-2 (¶3). The claims that the plaintiffs and the class and collective action that they have been certified to represent are based upon defendant's alleged failure to count as compensable work time the time that the plaintiffs and their co-workers were and are engaged in a continuous workday from the first donning to the last doffing of personal protective equipment (PPE) and other required gear to start and finish their work shifts.[1] DE-8.

For all members of the class and collective action other than those persons employed as flock testers, mechanics, and process controllers, the plaintiffs and the workers they represent allege that this uncompensated time includes, for each work shift, the total amount of elapsed time from the moment that any class member donned the class member's first piece of PPE or other required gear

---

[1] This continuous workday rule time includes  post-donning walking, waiting, and washing, pre-doffing walking, waiting, and washing, and when they perform all of those same activities during the same time allotted to the plaintiffs and those class members for 30-minute scheduled break(s).

to the first moment in time that the same class member received credit in the defendant's punch detail history for performing any work to start that class member's shift. *See, e.g.,* Plaintiff's Exhibit 13 attached (Deposition excerpts from deposition of Mary Hodges[2], pp. 27, 57, 59-60, 63-67 and pages 1 and 14 of the payroll time record marked as Plaintiff's Exhibit 209 attached to that deposition), Plaintiff's Exhibit 20 attached (Deposition excerpts from deposition of Jennie Suggs-Myers[3], pp. 14, 16-17, 28, 30, 37-38, 51, and 87-88), Plaintiff's Exhibit 23 attached (Deposition excerpts from deposition of Antonio Williams, pp. 17-18 and 41-42[4]), Plaintiff's Exhibit 21 attached (Deposition excerpts from deposition of Bessie Thompson[5], pp. 58-61, 91-92, 95-96, 103-04, 109-10, 112-17, 122-25, 127-28, 131-34, 137-39, 141-42, 144-49, and 165-66), Plaintiff's Exhibit 18 attached (Deposition excerpts from deposition of Yolanda Salinas[6], pp. 20-21, 23, 27, 44-45, 47-51, 56, 59-61, and 89), Plaintiff's Exhibit 12 attached (Deposition excerpts from deposition of Eroita Hernandez-Flores[7], pp. 14-16, 37-41, 44, 48-50, and 66-67), and Plaintiff's Exhibit 22 attached

---

[2]  For person(s) like Mary Hodges whom Butterball employed as a flock tester after Sept. 22, 2006, Butterball recorded and paid for all time spent in donning and doffing ("D&D") activities.

[3]  For person(s) like Jennie Suggs-Myers whom Butterball employed as a process controller ("PC") for all times relevant to this action, Butterball recorded and paid for all time spent in D&D activities to start and end each PC's work shift.

[4]  For person(s) like Antonio Williams whom Butterball employed as a mechanic for all times relevant to this action, Butterball recorded and paid for all time spent in D&D activities to start and end each mechanic's work shift.

[5]  For person(s) like Bessie Thompson whom Butterball employed as a production worker in one or more of the department(s) located on the raw side of the plant, Butterball did not record nor pay for any time spent in (D&D) activities.

[6]  For person(s) like Yolanda Salinas whom Butterball employed as a production worker in one or more of the department(s) located on the raw side of the plant, Butterball did not record nor pay for any time spent in (D&D) activities.

[7]  For person(s) like Eroita Hernandez-Flores whom Butterball employed as a production worker in one or more of the work area(s) located on the ready-to-eat ("RTE") side of the plant, Butterball did not record nor pay for any time spent in (D&D) activities.

(Deposition excerpts from deposition of Laura Toledaño[8], pp.14-16, 18, 22-27, 29, 32-33, 35, 38-42, 55, 61, and 71-74 ). For those same members of the class and collective action for each work shift they were employed in some capacity other than flock testers, PC, and/or mechanics, the plaintiffs and the workers they represent allege this uncompensated time also includes the total amount of elapsed time from the last moment in time that any class member received credit in the defendant's punch detail history for performing any work at the end of that class member's shift to the moment in time when that same class member doffed that class member's last piece of PPE or other required gear to end that class member's shift. *Id.* In addition, for all members of that same class and collective action other than those persons employed as flock testers, the plaintiffs and the workers they represent allege that this uncompensated time also includes the time that defendant automatically deducts for each scheduled one-half hour break(s) because the plaintiffs and the class members allege that the amount of time consumed in each of those scheduled one-half breaks by the performance of the activities described in above reduces the actual amount of break time to 20 minutes or less. *Id.* and 29 C.F.R. §§ 785.18 and 785.19.

In their Amended Complaint, plaintiffs have alleged FLSA overtime and minimum wage claims under the collective action provisions of 29 U.S.C. §216(b). DE-8. That same Amended Complaint also includes an independent statutory claim under the NCWHA based upon the defendant's failure to pay the promised wage rate (which exceeds the federal minimum wage) for all hours of work on their regular payday regardless of the length of the workweek. *See* N.C.Gen.Stat. §§ 95-25.2(8), 95-25.2(16), 95-25.6, and 95-25.13(1)-(2), and DE-8. For the time period from 1

---

[8]  For person(s) like Laura Toledaño whom Butterball employed as a production worker in one or more of the work area(s) located on the RTE side of the plant, Butterball did not record nor pay for

January 2007 until 28 July 2008 when the NCWHA itself also guaranteed an hourly rate higher than that provided by federal law, the plaintiffs have alleged another independent statutory claim under the NCWHA. *Compare* N.C.Gen.Stat. §§ 95-25.3 and 95-25.14(a)(1)b. to 29 U.S.C. §§ 206(a)(federal minimum wage does not equal or exceed NCWHA minimum wage of $6.15/hour, effective January 1, 2007, until July 28, 2008 when the FLSA minimum wage was increased to $6.55/hour); and DE-8. However, the plaintiffs have voluntarily dismissed their individual NCWHA claims for unlawful deductions from the plaintiffs' pay for the cost of the PPE. DE 447-1 at 2 (November 12, 2010 e-mail from plaintiffs' counsel to Butterball's counsel).

The defendant promised to pay plaintiffs and the class members that they represent hourly rates that were higher than the minimum rate required by or described in the FLSA or the NCWHA for all hours worked based upon what they were required to disclose and make available to the plaintiffs pursuant to the statutory requirements of the NCWHA. *See* N.C.Gen.Stat. §§ 95-25.2(8), 95-25.13(1)-(2) and 95-25.15(c); DE-8 (¶¶28-29), DE 82-3 at 1-6 (¶¶3-16)(sworn Declaration of Victor Melendez-Maldonado); DE 82-4 at 1-3 (¶¶3-9)(sworn Declaration of Plaintiff Ulda Aponte), and DE 82-5 at 1-5 (¶¶3-11)(sworn Declaration of Plaintiff Liliana Martinez-Hernandez). In each employee handbook that the defendant distributed to the plaintiffs and the members of the class they represent, the defendant also promised to pay plaintiffs and the class they represent time and one-half the regular hourly wage rates of the plaintiffs and those class members for any hours that exceeded 40 hours of actual work in the same workweek. *Id. See, e.g.,* Plaintiff's Exhibit 25 attached, p. 21. The defendant violated these promises and statutory obligations under the NCWHA by failing to pay for all donning and

any time spent in (D&D) activities.

doffing time. *See* Amended Complaint, ¶¶30-31, and N.C.Gen.Stat. §§ 95-25.2(8), 95-25.3, 95-25.4, 95-25.6, 95-25.14(a)(1)b.

By Order filed on September 2, 2008, the Court denied in relevant part the defendant's motion for summary judgment in which Butterball, LLC asked the Court to dismiss all of the Plaintiffs' Claims under the NCWHA. *Martinez-Hernandez v. Butterball, LLC*, 578 F.Supp.2d 816 (E.D.N.C. 2008). From its formation in October 2006, defendant Butterball, LLC employed and continues to employ the Plaintiff(s) and those members of the plaintiff class and collective action who worked at the Garner Chapel Road turkey processing plant at any time from October 2006 to the date final judgment is entered in this action. In the time period from January 1, 2004 up until the formation of Butterball, LLC in October 2006, Maxwell Farms, LLC f/k/a Maxwell Farms, Inc. and Smithfield Foods, Inc. d/b/a Carolina Turkeys employed the Plaintiffs and those members of the plaintiff class and collective action who worked at the Garner Chapel Road turkey processing plant at any time in that same time period.

Although Butterball has always recorded the time production workers clock in and out, Butterball has never paid production workers for the hours that they actually worked. Instead, Butterball has paid and pays production workers only for the time the production line runs. Plaintiff's 162 attached (excerpts of Deposition of Butterball, LLC by Karen Ingram on March 28, 2008, p. 48:4-16. Butterball calls its pay policy based on scheduled time for production employees "GANG" time. Production workers paid "GANG" time were thus not paid their actual hours. *Id.* Those workers are not paid for time spent working during their two unpaid 30 minute breaks. Since the line was not scheduled to operate during breaks, Butterball automatically deducts two thirty-minute periods for breaks. *See* DE 60-6 (Exhibit 7-1 - BB11560)(Defendant's

time calculation rules), that are filed under seal pursuant to DE-58. However, production workers spend much, if not the majority of time during their break time sanitizing, donning and doffing PPE. DE 60-7 (Exhibit 10-1 - Second Aponte Decl. at 3, ¶¶9-10)[9]; and Plaintiff's Exhibit 17 attached (Excerpts from the Deposition of Liliana Martinez-Hernandez, pp. 174:4-183:4). Those workers have only approximately fifteen minutes or less for each half-hour break. *Id.* This was barely enough time to eat some food and use the bathroom. Plaintiff's Exhibit 1 attached (Excerpts from the Deposition of Ulda Aponte a/k/a Mercedes Tabora-Sagastume, p. 100:13-24). Other employees took the opportunity to smoke a quick cigarette during their few minutes. Plaintiff's Exhibit 17 attached (Martinez-Hernandez Depo., 65:5-9). Thus, regardless of the actual time spent on break, and regardless of the fact that much of the break time was spent sanitizing, donning and doffing, Butterball automatically deducts an hour from workers pay under its GANG time policy.

Prior to the November 8, 2005 decision in *IBP v. Alvarez*, 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288 (Nov. 8, 2005)("*Alvarez*"), Butterball did not rely on any U.S. Department of Labor ("DOL") written administrative regulation, order, ruling, approval, or interpretation for its decision to pay for only GANG time. Plaintiff's Exhibit 16 attached (Deposition of Gary Lenaghan, pp. 40-56, and 61-65). Butterball did not seek attorney advice. *Id.*, pp. 40-42, 52-56, and 61-65). Before *Alvarez*, the defendant did not even attempt to analyze the law. *Id.*, pp. 57-59. Pre-*Alvarez*, Butterball did not inquire with the DOL or the North Carolina Department of Labor. *Id.*, pp. 65 and 176-77. Butterball did not analyze any court decisions under the FLSA or

---

[9] This declaration was filed under seal with the plaintiffs' motion and supporting memorandum for class certification. *See* DE-58 (Order sealing same).

NCWHA. *Id.*, page 61:4-13. Even though Butterball was aware of the continuous workday rule and the U.S. Department of Labor's enforcement policy of that same rule since the mid-1990's[10], Butterball did not obtain or produce any formal analysis of its legal obligations under the FLSA or NCWHA prior to *Alvarez*. *Id.*, pp. 40-42, 52-54, 57, and 60-61.

Immediately after the *Alvarez* decision, at least two major law firms working with the U.S. poultry industry (Jackson Lewis and Wimberly Lawson) sent memos to many major poultry producers. These memos were explicitly stated to not be legal advice and both urged companies to obtain specific legal advice about how to comply. Plaintiff's Exhibits 47 attached, p. 12, Plaintiff's Exhibit 98 attached, p. 5, and Plaintiff's Exhibits 99 and 101 attached. Despite these recommendations, Butterball did not obtain specific legal advice about how it could comply with the decision. Plaintiff's Exhibit 10 attached (Deposition of Butterball, LLC by Gary Lenaghan on Jan. 14, 2010, pp. 177-78). The Jackson Lewis memo presented three general options as to how a poultry industry employer could respond to *Alvarez* with an explanation of the possible consequences of choosing each option. Plaintiff's Exhibit 98 attached, pp. 4-5. First, the memo said, an employer could "do nothing" after carefully reviewing its pay system for compliance, or, second, create a pay system which captures all continuous work day rule time, which the memo said "would clearly be in compliance under any interpretation of the Court's decision," Plaintiff's Exhibit 98 attached at p. 4 (¶2)), or, third, an employer could "mitigate potential liability" by using plug time. Plaintiff's Exhibit 98 attached at p. 4. Butterball's HR Director Gary Lenaghan did not follow the Jackson Lewis memo's directive about how to comply with

---

[10] Plaintiff's Exhibit 10 attached (Deposition of Butterball, LLC by Gary Lenaghan on Jan. 14, 2010, pp. 63-64); and Plaintiff's Exhibit 16 attached (Deposition of Gary Lenaghan, pp. 26-27).

*Alvarez*. Instead, Lenaghan sent a memo in January 2006 to the defendant's management team in which he quoted the three options suggested by the Jackson Lewis memo almost verbatim. *Compare* Plaintiff's Exhibit 102, pp. 13-14[11], *with* Plaintiff's Exhibit 98 attached, pages 3-4. Lenaghan presented these same three options to Butterball's management committee for decision. *See* Plaintiff's Exhibit 102, pp. 13-14. Based upon the third option presented in the Jackson Lewis memo, Lenaghan recommended that Butterball mitigate potential liability and adopt "plug time" instead of complying with the Court's decision. *Id.* at pp. 16-17. Butterball's management committee adopted Lenaghan's recommendation. *Id.* at pp. 16-17.

The "plug time" donning and doffing policy that Butterball adopted in response to *Alvarez* and threats of DOL enforcement actions added six minutes of daily "plug time" in wage compensation in June 2006 to compensate workers for only the time to put on and take off clothing and equipment. *See* DE 60-7 (Exhibit 9, p. 1), filed under seal pursuant to DE-58. That six minutes of "plug time" was retroactive to January 1, 2006 for all current employees of Butterball. *Id.* Post *Alvarez* Butterball believed that its obligations under the FLSA were ambiguous. *See* Plaintiff's Exhibit 16 attached (Deposition of Gary Lenaghan, pages 73:19 to 74:1). However, Butterball again did not seek advice from the U.S. or North Carolina Departments of Labor. *See* Plaintiff's Exhibit 16 attached (Deposition of Gary Lenaghan, pages 176:7-23). This refusal to seek assistance or advice from DOL continued even after December 1, 2005 when DOL offered to help the poultry industry come into compliance with the FLSA.

---

[11] Plaintiff's Exhibit 102 has already been filed as DE-246 per the Order filed as DE-245 (hereinafter referred to as "Plaintiff's Exhibit 102").

Plaintiff's Exhibit 47 attached[12], and Plaintiff's Exhibit 16 attached (Deposition of Gary Lenaghan, p. 176:7-23).

In and after January 2006, the defendant also specifically declined and continued to reject any consultation with an attorney before it adopted and adhered to the January 16, 2006 donning and doffing policy recommendations of Mr. Lenaghan that are set forth in Plaintiff's Exhibit 102, pp. 16-17, even though the defendant was aware that attorneys with substantial expertise in the area of the FLSA were recommending the need for that kind of legal assistance. *See, e.g.,* Plaintiff's Exhibit 98 attached, p. 5 (Legal Memo issued by law firm of Jackson Lewis on November 28, 2005), and Plaintiff's Exhibit 10 attached (Excerpts from the Deposition of Butterball, LLC by Gary Lenaghan on Jan. 14, 2010, pp. 177-78 - citing to Plaintiff's Exhibit 102). In its memorandum of November 28, 2005 that Mr. Lenaghan reviewed before he made his written recommendation to the defendant on January 16, 2006, one or more attorney(s) employed by the law firm of Jackson Lewis advised that "[b]ecause of the uncertainties created by this decision [*Alvarez*], I urge each of you to consult with appropriate legal counsel to evaluate your company's individual position regarding FLSA compliance in light of the holdings in the *IBP* case." Plaintiff's Exhibit 98, p. 5.

The January 2006 decision by Butterball management to implement a "plug time" donning and doffing compensation policy for every production employee in all of its 20 different departments in three different shifts was based upon a two time studies that its Human Resources Department performed in December 2005. *See* Plaintiff's Exhibit 10 attached (Excerpts from the

---

[12] Plaintiff's Exhibit 47 attached is a copy of the memorandum that an attorney at Jackson Lewis prepared to describe his meeting with DOL officials on December 1, 2005 about DOL's

Deposition of Butterball, LLC by Mr. Lenaghan on January 14, 2010, pp. 187-199). In the first of those time studies, the defendant used only **one worker** to determine what "plug time" formula to use for approximately **150 workers** employed on two separate shifts in the "Ready to Eat" (RTE) side of Butterball's Duplin County plant. *Id.* In the second of those time studies for the production employees on the "raw" side of that same plant, the defendant considered data from about **100 employees** of the **over 1,500 production employees** who worked on a daily basis on that side the same plant. *Id.*

Thus, when the defendant actually implemented that "plug time" donning and doffing compensation policy at the defendant's Garner Chapel Road turkey processing plant, the defendant had no idea whether the "majority of the employees usually performed the [donning and doffing] activities within the given [six minute] time." *See* Plaintiff's Exhibit 10 attached (Excerpts from the Deposition of Butterball, LLC by Mr. Lenaghan on January 14, 2010, pp. 187-199, and 125-28). Indeed, the defendant has admitted that the two (2) time studies that it conducted in December 2005 to calculate the amount of "plug time" to be afforded to its production employees were both based upon a sample population that did not even remotely approach one-half of the production workers employed if that same turkey processing plant. *See also* Plaintiff's Exhibit 16 attached (Gary Lenaghan deposition, pp. 134-35).

To date, Butterball has not taken steps to completely comply with the FLSA and the continuous workday rule. It did not determine what the first and last principal work activities are. Plaintiff's Exhibit 16 attached (Deposition of Gary Lenaghan, pp. 122-23, 157, and 170-71). It did not determine what activities are integral and indispensible to the first principal work

enforcement position with respect to the *Alvarez* decision.

activity. *Id.*, pp. 102-05. It has never measured the actual time it takes employees to go through the donning and doffing process until they reach their spot on the production floor. *Id.*, pp. 157-60, and 162-63 It has not measured how long workers spend on break.. Plaintiff's Exhibit 10 attached (Deposition of Butterball, LLC by Gary Lenaghan on Jan. 14, 2010, pp. 26-27). It refuses to place a time clock in a location that would more accurately calculate the amount of time employees spend working pre and post shift. Plaintiff's Exhibit 16 attached (Deposition of Gary Lenaghan, pp. 151-55).

Further, Butterball has acted contrary to attorneys' well-considered advice. Butterball's attorneys, In November 2005, Jackson Lewis, Butterball's future counsel, recommended that Butterball and other poultry plant employers should pay punch to punch in order to ensure complete compliance with the FLSA. Plaintiff's Exhibit 98 attached, p. 4 (¶2). And other attorneys' recommended that Butterball seek legal advice about the implications of *Alvarez* decision. *Id.*, p. 5; and Plaintiff's Exhibit 101 attached, p. 4. Instead, Butterball chose a path it predicted to lead to litigation.[13] *See* Plaintiff's Exhibit 102, pp. 13-17. Based upon the defendant's reading of and reliance on a November 2005 memorandum of alert issued by Butterball's future counsel, in January 2006, when the defendant opted to implement a "plug time" strategy, the defendant's goal was to "mitigate potential liability" rather than comply with the law. Plaintiff's Exhibit 16 attached (Deposition of Gary Lenaghan, page 82:20-21); Plaintiff's Exhibit 102, pp. 13-17, and Plaintiff's Exhibit 98 attached, pp. 4-5.

---

[13] Given likely claim rates for a largely immigrant workforce, Butterball could expect to achieve savings with plug time, even with increased litigation costs. *See also* Plaintiff's Exhibit 47 attached, p. 11 ("second option is to wait and see what will happen next"), and Plaintiff's Exhibit 101, p. 4 ("time is on your side").

"Plug time" in a non-union plant does not have any legal underpinning, except to the extent that any payments to employees in a workweek can count as mitigation of liability. Plug time can be used in union plants under 29 U.S.C. §203(o), which permits collective bargaining agreements expressly or by practice to establish different rules to handle clothes changing and washing. Further, the Field Operations Handbook ("FOH") is not an "established ruling, administrative regulation, or interpretation of DOL within the meaning of 29 U.S.C. § 259(a) and the defendant's Third Defense. 29 C.F.R. § 790.17 (defining same); and DE 296 at 9 (¶3). As stated in the introductory page to the FOH on DOL's website, the FOH is "not used as a device for establishing interpretative policy."

In addition, as the Mt. Olive plant is and has always been a non-union plant[14], the subsection of the FOH upon which the defendant alleges that it relied does not apply because it is part of a section of the FOH only applies where a collective bargaining agreement exempts changing clothes and washing from compensable hours as set forth in 29 U.S.C. § 203(o).[15] The pertinent FOH section and subsection that are quoted below only address 29 U.S.C. § 203(o) and thus are inapplicable to the present dispute entirely:

> 31bo1 **Clothes changing and washup time where collective bargaining agreement makes no mention of practice.**
> There are certain instances in which clothes changing and washup activities by employees on the premises of the employer are integral parts of the principal activities of the employees because the nature of the work makes the clothes changing and washing indispensable to the performance of productive work by

---

[14] The defendant's turkey processing plant is a non-union plant. *See* Plaintiff's Exhibit 26 attached (Sixth Sworn Declaration of Ulda Aponte, ¶4).

[15] 29 U.S.C. 203(o) states:

"**(o)** Hours Worked.--In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."

the employees, but the collective bargaining agreement in effect in the establishment is silent as to whether this time should b included in, or excluded from, hours worked. Where such clothes changing and washup activities are the only preshift and postshift activities performed by the employees on the premises of the employer, the time spent in these activities has never been paid for or counted as hours worked by the employer, and the employees have never opposed or resisted this policy in any manner although they have apparently been fully aware of it., there is a custom or practice under the collective bargaining agreement to exclude this time from the measured working time, and FLSA Sec. 3(o) applies to the time.

> **31b01a** <u>**Clothes changing and washup time on a formula basis**</u>
> An employer may set up a formula by which employees are allowed given amounts of time to perform clothes changing and washup activities, provided the time is reasonable in relation to the actual time required to perform such activities. The time allowed will be considered reasonable if a majority of the employees usually perform the activities within the given time."

Plaintiff's Exhibit 53 attached, p. 5 (§ 31b01 and subsection a of § 31b01).

That § 31b01 and subsection 31b01a only apply to unionized employers is clear in that 31b01a is a subsection to § 31b01, and §31b01 is a section which explicitly applies to "collective bargaining agreements" and also by the reference to "clothes changing and washup" which are the subjects and the very language used in 29 U.S.C. § 203(o) relating to union workplaces. Clothes changing and washup are not the terms used by the Portal to Portal Act in determining which activites are work and which need not be paid. That Act uses the terms "preliminary" and "postliminary." Thus, the FOH simply does not apply to an employer who lacks a collective bargaining agreement and thus Butterball did not act "in conformity with" that subsection of the FOH. See 29 C.F.R. § 790.14(a).

In addition, subsection 31b01a of the FOH applies only to changing clothes and washup, and not to all continuous workday rule time. Plaintiff's Exhibit 53, p. 5 (FOH subsection

31b01a). Yet, Butterball applied plug time to walking, waiting and all other "continuous workday rule" time which are not covered by that subsection of the FOH.

Despite this history, the defendant has alleged in its Third Defense that its actions have been taken in good faith in conformity with and reliance upon established rulings, administrative regulations and interpretations of the FLSA by the Administrator for the Wage and Hour Division of the U.S. Department of Labor ("DOL"). Doc. 296 at 9 (¶3), and 29 U.S.C. § 259(b)(1). The sole basis for the Third Defense that the defendant pled in its Amended Answer (Doc. 296 at 9 (¶3)) was §31b01a of the Field Operations Handbook ("FOH") issued on September 19, 1996. Plaintiff's Exhibit 53 attached, pp. 1 and 5; Plaintiff's Exhibit 10 attached (Excerpts from the Deposition of Butterball, LLC by Mr. Lenaghan on January 14, 2010, pp. 125-28 and 192-99); and Plaintiff's Exhibit 11 attached (Excerpts from the Deposition of Butterball, LLC by Mr. Lenaghan on July 28, 2010, pp. 44-48).

In an Opinion Letter concerning the compensability of time spent donning and doffing equipment that was issued by the Administrator of the Wage and Hour Division of DOL on January 15, 2001, the Administrator opined, in part, as follows:

> "Also, a number of meatpacking companies have asked the Department if it would be permissible to pay employees wages based on an average of time that all employees work. I would like to reiterate that in order to comply with the FLSA and its implementing regulations (see 29 C.F.R. 516.2), a company must record and pay for each employee's actual hours of work, including compensable time spent putting on, taking off and cleaning his or her protective equipment, clothing or gear."

Plaintiff's Exhibit 123 attached, p. 2. The defendant first became aware of the contents of this January 15, 2001 opinion letter "within a year or two years" of the January 15, 2001 date of that opinion letter. *See* Plaintiff's Exhibit 10 attached (Excerpts from the Deposition of Butterball,

LLC by Mr. Lenaghan on January 14, 2010, pp. 65-69).

After the defendant was compelled to provide another deposition under Rule 30(b)(6) by Mr. Lenaghan on July 28, 2010, the defendant testified by the same designated witness that the defendant first came across the January 15, 2001 Opinion Letter while "checking at *Alvarez*", the U.S. Supreme Court decision that was decided on November 8, 2005. *See Alvarez*, *supra*; and Plaintiff's Exhibit 11 (Excerpts from the Deposition of Butterball, LLC by Mr. Lenaghan on July 28, 2010, pp. 33-36). The defendant came across this January 15, 2001 Opinion Letter **before** it made the decision to use the "plug time" formula method that Butterball claims gave it the legal authority to ignore its obligation under FLSA and its implementing regulations to ". . . record and pay for each employee's actual hours of work, including compensable time spent putting on, taking off and cleaning his or her protective equipment, clothing or gear." *See* Plaintiff's Exhibit 123, p. 2. The defendant's Vice President for Human Resources, Gary Lenaghan, elected to use his "version" of the "plug time" formula described in § 31b01a of the FOH issued on September 19, 1996 in January 2006 when he knew or had notice that the Wage and Hour Administrator had **specifically rejected** that means of compliance with the timekeeping requirements of the FLSA in an opinion letter that was issued more than 5 years later. And, as stated more fully above, Butterball refused to seek the attorney advice reasonably necessary to design compliance with *IBP v. Alvarez* when it adopted its own plug time mitigation measure.

On May 19, 2001, the Administrator of the Wage and Hour Division of DOL opined that:

"Unauthorized extensions of authorized employer breaks are not counted as hours worked for an employee when the employer has expressly and unambiguously communicated to the employee that:
(1)     The authorized break may only last for a specific length of time;
(2)     Any extension of such break is contrary to the employer's rules; and

(3)     Any extension of such break will be punished."

FOH, §31a01(c)(Copy provided in Plaintiff's Exhibit 53 attached, p. 3), and Opinion Letter FLSA2001-16 (Acting Administrator Thomas M. Markey May 19, 2001)(copy attached marked as Plaintiff's Exhibit 7)(adopting FOH, §31a01(c), as standard for determining when unauthorized extensions of authorized employer breaks are not counted as hours worked for an employee). On the basis of the results of videotaping conducted at the defendant's Garner Chapel Road turkey processing plant on 3 days in June 2009 and 1 day in January 2010 by videotape technicians acting at his direction and under his supervision and the sworn Declarations of Sharon Davis and John Lerch, the defendant's expert Dr. Fernandez has opined that Butterball, LLC and its predecessor, Carolina Turkeys, allowed all of their production employees in the RTE department to take at least five extra minutes beyond each of their two scheduled 30-minute breaks for the entire time period from March 31, 2005 to the present date. *See* Section 4 at pages 19-20 of DE-376 filed under seal pursuant to DE-379.[16]

On the basis of the results of videotaping conducted at the defendant's Garner Chapel Road turkey processing plant on 3 days in June 2009 and 1 day in January 2010 by videotape technicians acting at his direction and under his supervision, the defendant's expert Dr. Fernandez has opined that Butterball, LLC and its predecessor, Carolina Turkeys, allowed all of their production employees on the raw side of that same plant to take at least five extra minutes beyond each of their two scheduled 30-minute breaks for the entire time period from March 31, 2005 to the present date. *See* Section 4 at pages 19-20 of DE-376 filed under seal pursuant to

---

[16] For the convenience of the Court, this report has been refilled under seal and attached to this Memorandum marked as Plaintiff's Exhibit 28.

DE-379.

From March 31, 2005 to the present, production employees employed on the raw side of the Mt. Garner Chapel Road turkey processing plant were allowed two 30 minute unpaid breaks measured from the time that each production employee left that employee's workstation until the moment that they returned to their assigned workstation. *See* Plaintiff's Exhibit 162 attached (excerpts of the Deposition by Butterball, LLC by Karen Ingram on March 25, 2008 concerning Plaintiff's Exhibit 7 attached, pp. 61-62 and 71-72, and pages 1-4 of Plaintiff's Exhibit 7 to that same deposition that are a part of Plaintiff's Exhibit 162 attached to this memorandum). From March 31, 2005 to the present, during the orientation provided to all production employees before any production employee was allowed to work on a regular basis as a production employee by the defendant, the management employees who conducted that orientation advised all newly hired production employees that their scheduled breaks lasted 30 minutes. Plaintiff's Exhibit 2 (excerpts from the Deposition of Sandra Brinson taken on September 16, 2010, pp. 1-2, 6-7, 68-73, 79-83, 98-104, and page 2 of Plaintiff's Exhibit 185 to that same deposition which is attached as a part of Plaintiff's Exhibit 2 attached); Plaintiff's Exhibit 24 attached (excerpts from the Deposition of Denise Dixon, pp.8-9, 12, 49-50, 58-60, and pages 1 and 4 of  Plaintiff's Exhibit 294 of that deposition concerning the Second Processing" slide show used in Butterball's orientation training program for all newly hired production workers who were going to work in "Second Processing" that was discussed in aforecited Denise Dixon deposition testimony), and Plaintiff's Exhibit 314 attached, pp. 1-2 and 4 ("first processing" slide show discussed by Denise Dixon during her deposition testimony concerning the orientation training program for all newly hired production workers in which a slide show is used to advise all such workers that breaks are

30 minutes in duration).

From March 31, 2005 to the present, when production employees employed on the raw side of the Garner Chapel Road turkey processing plant were counseled or disciplined through the delivery of Human Resource Action Reports, the employees of the defendant's Human Resources department advised all production employees that the production employees had 30 minute unpaid breaks measured from the time that each production employee left that employee's workstation until the moment that they returned to their assigned workstation. Plaintiff's Exhibit 2 attached (excerpts from the Deposition of Sandra Brinson taken on September 16, 2010, pp. 1-2, 6-7, 68-73, 79-83, 98-104, and page 2 of Plaintiff's Exhibit 185 to that same deposition that was discussed by Sandra Brinson in her deposition testimony). From March 31, 2005 to the present date, assuming, *arguendo*, that the opinions of Dr. Fernandez that are summarized in at page 18 above are fully credited, the defendant suffered or permitted the plaintiffs and the members of the class and collective action that they represent to perform work in the form of engaging in whatever activities that caused them to return to their respective work stations more than 30 minutes after they had left that same work station to start their 30-minute break when the defendant did not expressly and unambiguously communicate to the plaintiffs and those production workers that the defendant's authorized one-half hour breaks could last for one-half hour only, that any extension of such break was contrary to the defendant's rules, and that any extension of such break would be punished because the evidence shows that very few of the class and collective action members were ever subjected to any form of disciplinary action even though it is Dr. Fernandez's opinion that the statistical mean for the break time actually taken by each department's employees exceeded the authorized break time by more than 16%.

*See* 29 C.F.R. §§ 785.13, 785.18, and 778.223.

For at least part of the alleged "extra minutes" of break time that forms the basis for the opinions of Dr. Fernandez that are summarized above, the plaintiffs and the production workers that they represent were actually engaged in the donning and doffing of PPE and other required gear, the washing of that PPE and gear, walking from their workstation to the location where they doffed that PPE or gear, and walking to their workstation after they had donned some PPE or that same gear. *See* Plaintiff's Exhibit 162 attached (Excerpts from the Deposition of Butterball, LLC by Karen Ingram on March 25, 2008, pp. 61-65); and Plaintiff's Exhibit 8 attached (Excerpts from the Deposition of Butterball, LLC by Karen Ingram on Jan. 13, 2010, pp. 193-203).

The defendant did not provide any of its production employees with any written notice or "through a posted notice maintained in a place accessible to its employees" its employment practices and policies with regard to the extra minutes for both of their scheduled one-half hour breaks that the defendant allegedly allowed all production employees. *See* Plaintiff's Exhibit 162 attached (Excerpts from the Deposition of Butterball, LLC by Karen Ingram on March 25, 2008, pp. 61-63, 66-68, and 79-80); Plaintiff's Exhibit 8 attached (Excerpts from the Deposition of Butterball, LLC by Karen Ingram on Jan. 13, 2010, pp. 201-04); Plaintiff's Exhibit 9 attached (Excerpts from the Deposition of Butterball, LLC by Karen Ingram on July 28, 2010, pp. 119-20); and Plaintiff's Exhibit 3 attached (Excerpts from the Deposition of Steve Swan on September 15, 2010, pp. 8-12, 101-102, and 107).

The defendant did not produce any evidence that plaintiffs or any other person(s) that the plaintiffs have been certified to represent ever knowingly submitted any false or inaccurate time

reports. As a matter of law, the alleged failure of the plaintiffs and the members of the class and collective action they represent to mitigate the defendant's alleged failure to pay wages due under the FLSA and the NCHWA is not a defense to any of the statutory claims that the plaintiffs have alleged. All of the claims that are the subject of this memorandum were filed within the statutes of limitation for FLSA and NCWHA claims. The defendant has not produced any evidence that as a matter of law provides any factual basis for its alleged defenses under the doctrine of laches, waiver and estoppel.

During the entire time period from March 31, 2005 to the present, the defendant had and continues to have a written policy which prohibited all production employees who were and/or are employed on the raw side of the plant from wearing any plastic sleeves, plastic apron, and rubber gloves in the cafeteria located at the Garner Chapel Road processing plant. *See* Plaintiff's Exhibit 27 attached (Sworn Declaration of Jennie Suggs-Myers, pp. 1-2 (¶4)). Any production worker who did so was subject to disciplinary action for this violation of the defendant's Good Manufacturing Practices rules. *Id.* During that same time period, the defendant also had and continues to have a written policy which prohibited all production employees who were and/or are employed on the raw side of the plant from exiting that same plant at the end of the shift while wearing any plastic sleeves, plastic apron, and rubber gloves or putting on any plastic sleeves, plastice apron, and rubber gloves outside of that same plant. *See* Plaintiff's Exhibit 27 attached (Sworn Declaration of Jennie Suggs-Myers, p. 2 (¶5)). Any production worker who did so was also subject to disciplinary action for this violation of the defendant's Good Manufacturing Practices rules. *Id.*

III.    **ARGUMENT**

A.    **Summary Judgment Standard**

The legal standards for summary judgment are well established and fully set forth in the

Court's decision in *Garcia v. Frog Island Seafood, Inc.*, 644 F.Supp.2d 696, 703-04 (E.D.N.C.

2009).

B.    **Partial Summary Judgment Should Be Entered As to the Defendant's
      Affirmative Defense Under 29 U.S.C. § 259 For a Number of Reasons**

1.    The Field Operations Handbook ("FOH") Upon Which the Defendant Relied
      Is Not an "Established Ruling, Administrative Regulation, or Interpretation
      of DOL Within the Meaning of 29 U.S.C. § 259(a)

In ¶3 of its Amended Answer, the defendants alleged that their actions "have been taken in

good faith in conformity with and reliance upon established rulings, administrative regulations

and interpretations of the FLSA with the meaning of 29 U.S.C. § 259." Notably, the defendant

did **not** allege that its actions were taken in good faith and in conformity and reliance upon any

"administrative practice or enforcement policy" of the Administrator of the Wage and Hour

Division of DOL. See 29 U.S.C. § 259 and 29 C.F.R. §§ 790.17 and 790.18 (DOL regulations

which distinguish between the definition of "rulings, administrative regulations, and

interpretations" by DOL and DOL's "administrative practice or enforcement policy").

In its deposition under Rule 30(b)(6) by Gary Lenaghan on both January 14, 2010 and

July 28, 2010, Mr. Lenaghan testified that he recommended Butterball, LLC decided to institute

a system of "plug time" effective June 2006 "in good faith and in conformity and reliance upon"

his reading of § 31b01a of the FOH. *See* Plaintiff's Exhibit 10 attached (Excerpts from the

Deposition of Butterball, LLC by Mr. Lenaghan on January 14, 2010, pp. 125-28 and 192-99),

Plaintiff's Exhibit 11 attached (Excerpts from the Deposition of Butterball, LLC by Mr. Lenaghan on July 28, 2010, pp. 44-48), and Plaintiff's Exhibit 53 attached, pp. 1 and 5 (copy of § 31b01a of the FOH issued on September 19, 1996). However, at the time claims he became aware of FOH 31b01a, he had also been aware of the DOL Opinion Letter of January 15, 2001, Plaintiff's Exhibit 123 attached, p. 2. indicating that a plug time system would not be acceptable. And Lenaghan did not consult an attorney to resolve any conflict, or to obtain an opinion as to whether FOH 31b01a would apply to a non-union plant.

Furthermore, the introductory page of the FOH that is contained on DOL's website clearly states that "the FOH is not used as a device for establishing interpretative policy." See page 1 of Plaintiff's Exhibit 4 attached (copy of introductory page for FOH on DOL's website), and http://www.dol.gov/whd/FOH/index.htm. See also 29 C.F.R. § 790.17 (defining "rulings, administrative regulations, and interpretations" by DOL for purposes of § 259 of the FLSA). If the FOH qualifies as anything that is relevant to § 259 of the FLSA, it is an "administrative practice or enforcement policy". *See* 29 C.F.R. § 790.18 (defining same).

The defendant employer has the burden of both pleading and proving all elements of any defense under 29 U.S.C. § 259. *Dole v. Odd Fellows Home Endowment Board*, 912 F.2d 689, 695-96 (4th Cir. 1990). "The burden of proof is a heavy one, especially because if proven, this defense acts as a bar to the proceeding, absolving defendant from liability and penalties for past violations." *De Luna-Guerrero v. The North Carolina Grower's Association, Inc. ("NCGA")*, 370 F.Supp.2d 386, 391 (E.D.N.C. 2005)("*De Luna-Guerrero*"). In this case, the plaintiffs contend that the defendant's § 259 defense must fail because the defendant did not act "in good faith and in conformity and reliance upon" any DOL "ruling, administrative regulation, or

interpretation". *See, e.g., Hultgren v. County of Lancaster, Nebraska*, 913 F.2d 498, 507-08 (8th Cir. 1990)(discussing definition of what constitutes a "written interpretation" by DOL under § 259(a))("*Hultgren*"). As is clearly stated in the introductory page to the FOH on DOL's website, the FOH is simply "not used as a device for establishing interpretative policy." Page 1 of Plaintiff's Exhibit 4.

> 2. Even If the Defendant Properly Pled Good Faith Reliance and Conformity With the FOH, the Defendant Has Not Met Its Heavy Burden to Prove That It Acted "In Reliance On" the FOH

In order to meet their burden of proof under § 259(a), the defendant must meet its "heavy burden" to prove that it acted "in reliance on" Subsection 31b01a of the FOH when it instituted its 6-minute "plug time" donning and doffing compensation policy in June 2006. 29 C.F.R. § 790.16(a). In this case, the record shows that the defendant did **not** rely upon Subsection 31b01a of the FOH when Mr. Lenaghan formulated and Butterall adopted the January 16, 2006 recommendation of Mr. Lenaghan. Rather, both Mr. Lenaghan and Butterball relied upon the second of the three options presented by its future legal counsel, the law firm of Jackson Lewis, when they elected to "mitigate their liability" by adopting the "plug time" option set forth in the November 28, 2005 memo from Jackson Lewis that formed the basis for Mr. Lenaghan's recommendation of January 16, 2006 that Butterball management adopted in January 2006. See Plaintiff's Exhibit 98 attached, pp. 4-5 (¶2); and Plaintiff's Exhibit 102, pp. 13-17. That memorandum makes no mention of § 31b01a of the FOH. Furthermore, Lenaghan's memorandum recommendation of the plug time system to Butterball's management committee (which virtually verbatim quotes the Jackson Lewis three options) itself makes no reference to §

31b01a of the FOH. And the management committee did not consider anything having to do with § 31b01a of the FOH when it decided to adopt the plug time system recommended by Lenaghan. *See* Plaintiff's Exhibit 19 attached (excerpts from the Deposition of Keith Shoemaker pp. 24-38); and Plaintiff's Exhibit 15 attached (excerpts from the Deposition of Ed Kacsuta, pp. 20:7 – 29:16). The only document they considered was the Lenaghan recitation of the Jackson Lewis three options. *Id.* Butterball did not rely on FOH 31b01a in adopting its plug time policy.

> 3. Even If the Defendant Properly Pled Good Faith Reliance and Conformity With the FOH, the Defendant Has Not Met Its Heavy Burden to Prove That It Acted "In Conformity With" the FOH

The defendant also cannot meet its "heavy burden" to prove that it acted "in conformity with" the FOH for a number of reasons. The first of those is based upon the inapplicability of § 31b01 and Subsection 31b01a of the FOH to any employment situation which is not governed by a collective bargaining agreement ("CBA") between a union and a defendant employer. The facts of this case clearly demonstrate that the defendant is not operating its Garner Chapel Road plant under the terms of a CBA. Therefore, the defendant's adoption of its "plug time" policy in June 2006 retroactive to January 1, 2006 for its current production employees was not "in conformity with" any provision of the FOH. *See Hultgren*, 913 F.2d at 507-08.

Even if it could be assumed that § 31b01 and Subsection 31b01a do apply to a non-union setting, the second reason the defendant's "plug time" donning and doffing policy was not "in conformity with" any provision of the FOH is that the defendant failed to follow the formula set forth in the FOH to determine a reasonable amount of time by which employees are given amounts of time to perform clothes changing and washup activities. Subsection 31b01a reads as follows:

"**31b01a Clothes changing and washup time on a formula basis**

> An employer may set up a formula by which employees are allowed given amounts of time to perform clothes changing and washup activities, provided the time is reasonable in relation to the actual time required to perform such activities. The time allowed will be considered reasonable if a majority of the employees usually perform the activities within the given time."

*See* Plaintiff's Exhibit 53 attached, p. 5 (copy of relevant excerpts from the FOH issued on September 19, 1996). The testimony of Butterball, LLC in its Rule 30(b)(6) deposition by Mr. Lenaghan on January 14, 2010 and the written recommendation of Mr. Lenaghan set forth in Plaintiff's Exhibit 102, pp. 13-17, demonstrates that Butterball did not act "in conformity with" subsection 31b01a of the FOH. *See* Plaintiff's Exhibit 10 attached (Excerpts from the Deposition of Butterball, LLC by Mr. Lenaghan on January 14, 2010, pp. 187-199, and 125-28). That testimony clearly shows that at the time the defendant instituted its 6 minute "plug time" formula for compensating all of its production workers for donning and doffing work Butterball, LLC had no idea whether the "majority of the employees usually performed the [donning and doffing] activities within the given [six minute] time." *Id.* Furthermore, the defendant has admitted that the two (2) time studies that it conducted in December 2005 to calculate the amount of "plug time" to be afforded to its production employees were both based upon a sample population that did not even remotely approach one-half of the production workers employed if that same turkey processing plant. *See also* Plaintiff's Exhibit 16 attached (Gary Lenaghan deposition, pp. 134-35).

Indeed, Butterball, LLC instituted its "one size fits all" plug time formula of 6 minutes to compensate every production employee in all of its 20 different departments in three different

27

shifts based upon a two time studies that its Human Resources Department performed in December 2005. *See* Plaintiff's Exhibit 10 attached (Excerpts from the Deposition of Butterball, LLC by Mr. Lenaghan on January 14, 2010, pp. 187-199). In the first of those time studies, the defendant used only one worker to determine what "plug time" formula to use for approximately 150 workers employed on two separate shifts in the "Ready to Eat" (RTE) side of Butterball's Duplin County plant. *Id.* In the second of those time studies for the production employees on the "raw" side of that same plant, the defendant considered data from about 100 employees of the over 1,500 production employees who worked on a daily basis on that side the same plant. *Id.* Thus, as with the employer in *Hultgren*, the defendant's application of the plug time "formula" provisions of the FOH were not "in conformity with" the actual provisions of § 31b01a of the FOH. *See Hultgren*, 913 F.2d at 507-08.

This failure by Butterball to institute its "plug time" donning and doffing policy "in conformity with" the FOH is further confirmed in a review of the actions and omissions of Butterball in the formulation of its "plug time policy". The FLSA requires Butterball to pay under the continuous workday rule[17] for activities that are an integral and indispensable part of the principal activities. *IBP v. Alvarez, supra*; and 29 C.F.R. §§ 790.7 and 790.8 (defining "principal activities" for purposes of applying continuous workday rule). This has been the rule for over five decades. *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956). Butterball has never evaluated what activities are compensable under the continuous workday rule and never determined what constituted its workers first principal work activity. Butterball also has not timed how long workers spend working during their 30 minute unpaid break. Butterball refuses

to move its time clocks in order to accurately capture the time workers work and properly pay them as is required by the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2(a)(5), 516.6(a)(1). And in an attempt to reduce its liability, Butterball chose to pay its workers for a few extra minutes a day without measuring whether "a majority of the employees usually perform the activities within the given time." Butterball admits that when it instituted the six minute "plug time", Butterball did not know whether the "majority of the employees usually performed the [donning and doffing] activities within the given [six minute] time." Plaintiff's Exhibit 10 attached (Deposition of Butterball, LLC by Gary Lenaghan on January 14, 2010, pp. 187-199, and 125-28). Butterball used only one worker – an OJT Trainer - to determine what "plug time" formula to use for the approximately 150 workers. Butterball did not measure 50 percent of its workforce, it measured 0.67 of a percent on the RTE side of the plant.[18] *Id.;* Plaintiff's Exhibit 14 attached (Deposition of Karnen Ingram, p. 34:13-35:21. And Butterball used data from only about 100

---

[17] See 29 C.F.R. § 790.6(a).

[18] Per the excerpt from her July 27, 2010 deposition that is copied in Plaintiff's Exhibit ___ attached, Deputy HR Rep. Karen Ingram testified as follows in her July 27, 2010 deposition:
                39
22 Q. So, the numbers that are on here are one
23 donning trip and one doffing trip, correct?
24 A. Yes, from that area that's listed.
25 Q. And you didn't measure any kind of a
                40
 1 range of times that different people might
 2 spend to do these activities, correct?
 3 A. No, I did not.
 4 Q. Because you just measured the one person?
 5 A. That's correct.
 6 Q. I take it you have no idea what kind of
 7 range there might be in people doing these
 8 activities?
 9 A. No, I don't.

employees of the over 1,500 production employees, or 6.7 percent of its workers who worked on the "raw" side of plant. *Id.* Nor did the study measure all compensable time from the first principal work activity to the last principal work activity. DE 84-8 (Plaintiff's Exhibit 49 for March 28, 2008 Deposition of Butterball, LLC by Karen Ingram) and DE 84-9 (Plaintiff's Exhibit 50 for March 28, 2008 Deposition of Butterball, LLC by Karen Ingram) that are both filed under seal per DE-92.[19] In fact, no actual time under real work conditions were ever measured. Deposition of Karen Ingram, July 26, 2010, p. 27:20-22. Nor did the internal time studies measure typical or average waiting time, which is part of the continuous workday rule time. *Id.,* p. 39:2-4. Nor did they measure any extra delays caused by congestion as the simulations were run when everyone else was working. *Id.,* pp.31:22 – 32:5. The RTE time study was also a simulation rather than an actual measurement. DE 84--9 (Plaintiff's Exhibit 50, p. 1, for March 28, 2008 Deposition of Butterball, LLC by Karen Ingram) that is filed under seal per DE-92. The "raw" side study report confirms that "We had to manipulate the study slightly..... Since waiting in line at supply is not compensable time we had the individuals get all their supplies and begin their donning at the locker…". DE 84-8 (Plaintiff's Exhibit 49, p. 1, for March 28, 2008 Deposition of Butterball, LLC by Karen Ingram) that is filed under seal per DE-92. However, waiting in line time is compensable for workers if they have already begun their first principal work activity under the continuous workday rule. Thus, Butterball did not measure actual time from first principal work activity to last, but measured a hypothetical amount of time under laboratory conditions which were designed to be shorter than actual time, and it did not

---

[19] For the convenience of the Court both Plaintiff's Exhibits 49 and 50 are refiled under seal with

conduct measurement of a majority of workers. Thus, Butterball has not actually complied with the requirement of the FOH that the formula time must fully compensate the majority of workers.

Further, Butterball has not measured how much time workers worked donning and doffing, walking and waiting, during their two 30-minute unpaid breaks. Thus, as in *Hultgren*, Butterball's use of the plug time "formula" is not "in conformity with" § 31b01a of the Handbook. *See Hultgren*, 913 F.2d at 507-08.

        4.      Even If the Defendant Properly Pled Good Faith Reliance and Conformity With the FOH, the Defendant Has Not Met Its Heavy Burden to Prove That It Acted "In Good Faith With" the FOH Under 29 U.S.C. § 259

The DOL regulations also address proof of good faith in connection with an administrative practice or enforcement policy:

> "An employer will be relieved from liability, in an action by an employee, because of reliance in good faith on an administrative practice or enforcement policy only (1) where such practice or policy was based on the ground that an act or omission was not a violation of the (Fair Labor Standards) Act, or (2) where a practice or policy of not enforcing the Act with respect to acts or omissions lead the employer to believe in good faith that such acts or omissions were not violations of the Act."

29 C.F.R. § 790.18(d)(quoting legislative history). The plaintiffs contend that the provisions of § 31b01a of the FOH do not state that use of a plug time formula to calculate and record work time for purposes of compensation to workers for donning and doffing items of personal protective equipment ("PPE") required by OSHA regulations and/or USDA sanitation regulations[20] is not a

---

the other exhibits filed in support of this memorandum.

[20] *See, e.g.,* 21 C.F.R. § 110.10(b)(6)(hair nets and beard nets); 9 C.F.R. § 416.5(b), 29 C.F.R. § 1910.136 & 21 C.F.R. § 110.10(b)(1)(boots); 21 C.F.R. § 110.10(b)(6) & 29 C.F.R. § 1910.134 (bump caps); 29 C.F.R. § 1910.95 (earplugs); and 29 C.F.R. § 1910.133 (safety glasses).

violation of the recordkeeping and compensation requirements of the FLSA. *See de Luna-Guerrero*, *supra*, 370 F.Supp.2d at 393-94. This is confirmed by the opinion of defendants' counsel in their memorandum of November 28, 2005 when they described use of a "plug time" system as nothing more than a means to "***mitigate*** potential liability" under *IBP v. Alvarez*, 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288 (Nov. 8, 2005)("*Alvarez*"). *See* Plaintiff's Exhibit 98 attached, p. 4, ¶3 (bold type and italics added). It is further confirmed by the words of the defendant itself through its Vice-President of Human Resources when he recognized that "[b]y doing the above [adoption of the "plug time" donning and doffing compensation policy that he recommended in his report of January 16, 2006] we would demonstrate a good faith effort to meet the requirements of the law and continuous progress ***towards reaching actual time which seems to be indicated by the DOL***." Plaintiff's Exhibit 102 attached, p. 15 (¶7)(bold type and italics added to original). This rationale of mitigating potential liability rather than modifying its pay practices to comply with *Alvarez* to include all continuous workday rule donning and doffing activities and walking time as compensable was adopted verbatim by the defendant's Vice-President of Human Resources, Gary Lenaghan, in the recommendation that the defendant adopted with regard to the use of "plug time". *Compare* Plaintiff's Exhibit 98 attached, pp. 4-5, *with* Plaintiff's Exhibit 102, pp. 13-15, that has already been filed under seal. *See* Doc. 245 (Order providing for filing of Doc. 246 under seal). If there was any doubt about this, the Wage and Hour Administrator's Opinion Letter issued on January 15, 2001 resolve it when he specifically rejected that interpretation of the FLSA:

> "In addition, I would like to take this opportunity to reiterate, as we dicussed in our earlier meetings, that under the FLSA and the Portal-to-Portal Act, it is the Department's longstanding position that, as a general matter, compensable hours

worked include all time from the moment each employee performs the first principal activity of the employee's workday until the last principal activity is concluded, less any bona fide meal periods or bona fide off-duty time. An employer must compensate its employees for any activity that is an integral and indispensable part of the employee's principal activities, including the putting on, taking off and cleaning of personal protective equipment, clothing or gear that is required by law, by rules of the employer or by the nature of the work. It should also be noted that the meal period may not include any time performing "work", and that time spent donning and doffing of personal protective equipment, clothing or gear before or after the meal period is compensable.

**Also, a number of meatpacking companies have asked the Department if it would be permissible to pay employees wages based on an average of time that all employees work. I would like to reiterate that in order to comply with the FLSA and its implementing regulations (see <u>29 C.F.R. 516.2</u>), a company must record and pay for each employee's actual hours of work, including compensable time spent putting on, taking off and cleaning his or her protective equipment, clothing or gear.**"

Plaintiff's Exhibit 123 attached, pp. 1-2 (bold type added). This DOL opinion letter was specifically cited by the Wage Hour Administrator in 2002 when it issued another opinion letter concerning donning and doffing issues which related to a different aspect of the January 15, 2001 opinion letter. *See* Plaintiff's Exhibit 5 attached, p.1 (copy of Opinion Letter FLSA2002-2 issued on June 6, 2002).[21] The defendant first testified that the defendant became aware of the contents of the January 15, 2001 opinion letter "within a year or two years" of the January 15, 2001 date of that opinion letter. *See* Plaintiff's Exhibit 10 attached (Excerpts from the Deposition of Butterball, LLC by Mr. Lenaghan on January 14, 2010, pp. 65-69).

---

[21] A copy of this opinion letter is and has been available on DOL's website at all times relevant to this litigation with a click of a button on the same website page which provided access for the general public to the FOH. *See* http://www.dol.gov/whd/opnion/opinion.htm. Through its designated witness, Mr. Lenaghan, Butterball testified that it used this DOL website to access the FOH and selected opinion letters of the Administrator in late 2005 when the defendant was deciding how to respond to the *Alvarez* decision. *See* Plaintiff's Exhibit 11 (Excerpts from the Deposition of Butterball, LLC by Mr. Lenaghan on July 28, 2010, pp. 35-36).

When questioned further about the specific language that is quoted in bold type from that January 15, 2001 opinion letter, the defendant's designated witness then retracted that testimony and indicated that he did not know when the company first became aware of the contents of that January 15, 2001 opinion letter. *Id.* After the defendant was compelled to provide another deposition under Rule 30(b)(6) by Mr. Lenaghan on July 28, 2010, the defendant testified by the same designated witness that the defendant first came across the January 15, 2001 opinion letter while "checking at *Alvarez*", the U.S. Supreme Court decision that was decided on November 8, 2005. *See Alvarez*, *supra*; and Plaintiff's Exhibit 11 (Excerpts from the Deposition of Butterball, LLC by Mr. Lenaghan on July 28, 2010, pp. 33-36). This was still **before** the defendant made the decision to use the "plug time" formula method that Butterball claims gave it the legal authority to ignore its obligation under FLSA and its implementing regulations to ". . . record and pay for each employee's actual hours of work, including compensable time spent putting on, taking off and cleaning his or her protective equipment, clothing or gear." *See* Plaintiff's Exhibit 123 attached, p. 2. The testimony of Mr. Lenaghan makes it clear that he elected to use his "version" of the "plug time" formula described in § 31b01a of the FOH issued on September 19, 1996 when he knew or had notice that the Wage and Hour Administrator had **specifically rejected** that means of compliance with the timekeeping requirements of the FLSA in an opinion letter that was issued more than 5 years later. Thus, by whatever version of Butterball's testimony, Butterball has not met its "heavy burden" to demonstrate the "good faith" required by 29 U.S.C. § 259. *See* 29 C.F.R. § 790.15(a), *Mayhew v. Wirtz*, *supra*; and *de Luna-Guerrero*, *supra*. It should be noted that when it issued its informational memorandum on November 28, 2005 Jackson Lewis did not recommend that Butterball adopt a plug time system to comply with

*Alvarez*; rather, it recommended that Butterball obtain attorney advice about how to comply with *Alvarez.* Plaintiff's Exhibit 98, p. 5. Butterball failed to follow this advice and adopted a system that was designed only to mitigate liability and which was clearly expected to generate litigation. And it adopted the plug time system, not in reliance on the FOH, but upon the Jackson Lewis memo which did not mention the FOH and which only recommended consulting with an attorney.

This evidence of the defendant's knowledge of the content of this January 15, 2001 opinion letter **before** it made the decision to use a "plug time" formula to meet its FLSA obligation to ". . . record and pay for each employee's actual hours of work, including compensable time spent putting on, taking off and cleaning his or her protective equipment, clothing or gear" is more evidence of yet another way in which the defendant did not have the "honest of intention and no knowledge of circumstances which ought to put him upon inquiry." 29 C.F.R. § 790.15(a), *Mayhew v. Wirtz*, 413 F.2d 658, 663 (4th Cir. 1969); and *de Luna-Guerrero*, *supra*, 370 F.Supp.2d at 394-95. Indeed, even with this knowledge of the January 2001 Opinion Letter from the Wage and Hour Administrator that is quoted above, the defendant specifically eschewed any consultation with an attorney before it adopted in January 2006 the recommendations of Mr. Lenaghan that are set forth in Plaintiff's Exhibit 102[22] even though the defendant was aware that attorneys with substantial expertise in the area of the FLSA were recommending the need for that kind of legal assistance. *See, e.g.,* Plaintiff's Exhibit 98 attached,

---

[22] The Jan. 16, 2006 recommendation of Mr. Lenaghan cited as Plaintiff's Exhibit 102 in Butterball's January 14, 2010 deposition by Mr. Lenaghan quotes the memo of Jackson Lewis almost verbatim in many parts. *Compare* pages 3-4 and 12-14 of Plaintiff's Exhibit 102 *with* Plaintiff's Exhibit 98 attached, pp. 1-4.

p. 5 (Legal Memo issued by law firm of Jackson Lewis on November 28, 2005), and Plaintiff's Exhibit 10 attached (Excerpts from the Deposition of Butterball, LLC by Gary Lenaghan on Jan. 14, 2010, pp. 177-78)(citing to Plaintiff's Exhibit 102). In its memorandum, the law firm of Jackson Lewis advised that "[b]ecause of the uncertainties created by this decision [*Alvarez*], I urge each of you to consult with appropriate legal counsel to evaluate your company's individual position regarding FLSA compliance in light of the holdings in the *IBP* case." *Id.*

Butterball's failure in this regard is emphasized by its argument that the legal landscape under the DOL and the courts was conflicting and constantly changing. Plaintiff's Exhibit 16 attached (Deposition of Gary Lenaghan, pp. 102:19 to 102:24). *Maciel v. City of Los Angeles*, 569 F.Supp.2d 1038, 1053 (C.D.Cal. 2008) (§ 259 defense inapplicable because employer placed on notice that putting on some police equipment was compensable); *Chavez v. IBP, Inc.*, CV-01-5093- RHW, 2005 U.S.Dist.LEXIS 29714, *110, 2005 WL 6304840, *33 (E.D.Wash. May 16, 2005)(copy attached)("Tyson did not exercise subjective good faith, because it attempted to comply only with DOL opinion letters and legal rulings that reduced its responsibility to pay employees for compensable work. This opportunistic approach does not amount to an honest intention to comply with the FLSA. Tyson did not exercise objective good faith because a reasonably prudent person would have examined the conflicting section 3(o) interpretations in place in June 2002, and taken the more conservative path.")

Here, Butterball explicitly chose not contact the DOL because it did not want to risk an enforcement action. Plaintiff's Exhibit 16 attached (excerpts from Deposition of Gary Lenaghan on July 26, 2010, pp. 176:7-176:23). Instead, Butterball hoped that it could continue to avoid liability and claims expired each pay period.

Butterball cannot show that it acted in subjective or objective good faith to comply with its obligations either before or after *Alvarez*. Butterball could have contacted the DOL in order to ensure FLSA compliance. Here, had Butterball wanted to resolve any ambiguity or ensure compliance, it would have reached out to the US DOL or responded to DOL's outreach to the poultry industry. But Butterball did not do that. Nor did Butterball contact an attorney and obtain legal advice about its particular situation. Instead, Butterball relied upon non-specific memos directed generally to the entire poultry industry, which spoke only in generalities, and which themselves recommended obtaining specific legal advice. Nevertheless, Butterball refused to follow the specific advice in the general memos that it received.

Furthermore, during the *IBP v. Alvarez* litigation that the defendant and other poultry processors closely followed well before the Supreme Court's November 8, 2005 decision, the Ninth Circuit had held that donning and doffing of PPE does not even constitute "changing clothes" within the meaning of 29 U.S.C. 203(o). The Ninth Circuit found the fundamental question to be decided was whether "putting on and taking off protective gear constitutes 'changing clothes' as that phrase is used in the statute. The Ninth Circuit held that it did not. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 903-05 (9th Cir.2003)( "since the protective gear does not plainly and unmistakably fit within [§ 203(o)'s] clothing term," the court should construe the exemption against the defendant.), *aff'd on other grounds*, 546 U.S. 21 (2005). Thus, the Field Operations Handbook would have no applicability to this case anyway, since donning and doffing of PPE is not "changing clothes." If Butterball had consulted a lawyer, the preceding holdings of *IBP v. Alvarez* and other similar decisions would have been available to it in determining whether a plug time system would do anything more than "mitigate liability."

Although it was aware of the continuous workday rule and DOL's enforcement of that rule with respect to the donning and doffing of personal protective equipment since the mid-1990's, Butterball chose to risk litigation and avoid full FLSA compliance. *See* Plaintiff's Exhibit 10 attached (Deposition of Butterball, LLC by Gary Lenaghan on Jan. 14, 2010, pp. 63-64); and Plaintiff's Exhibit 102, pp. 13-17. Under the Fourth Circuit's interpretation of "good faith" in the FLSA context, these acts cannot be considered to be good faith. *See Mayhew v. Wirtz*, *supra*, 413 F.2d at 663.

**C.  Partial Summary Judgment Should Be Entered for the Plaintiffs As to Defendant's Ninth and/or Nineteenth Defenses Under the FLSA and the NCWHA That It Is Entitled to Setoff Alleged Extra Time That Production Workers Were Allowed For Break on a Daily Basis**

Section 785.13 of Title 29 of the Code of Federal Regulations requires that all employers:

"to exercise its control and see that work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so."

Consistent with that regulation, the Wage and Hour Administrator has opined that:

"Unauthorized extensions of authorized employer breaks are not counted as hours worked for an employee when the employer has expressly and unambiguously communicated to the employee that:
(4)     The authorized break may only last for a specific length of time;
(5)     Any extension of such break is contrary to the employer's rules; and
(6)     Any extension of such break will be punished."

FOH, §31a01(c)(Copy provided in Plaintiff's Exhibit 53 attached, p. 3), and Opinion Letter FLSA2001-16 (Acting Administrator Thomas M. Markey May 19, 2001)(copy attached marked

as Plaintiff's Exhibit 7)(adopting FOH, §31a01(c), as standard for determining when unauthorized extensions of authorized employer breaks are not counted as hours worked for an employee).

The DOL has also promulgated two regulations relevant to rest periods. The first specifies that:

> "Under the [FLSA] an employee must be compensated for all hours worked. As a general rule the term "hours worked" will include: (a) All time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace and (b) **all time during which an employee is suffered or permitted to work whether or not he is required to do so. Thus, working time is not limited to the hours spent in active productive labor, but includes time given by the employee to the employer even though part of the time may be spent in idleness.**"

29 C.F.R. § 778.223 (bold type added). The second specifies that:

> "Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. **Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time.**"

29 C.F.R. § 785.18 (bold type added).

In their Ninth and Nineteenth Defenses, Butterball contends that any calculation of uncompensated work time for plaintiffs should be offset by any time for which plaintiffs were compensated but were not working. In support of its contention, the defendant points to the report of its expert Dr. Fernandez in which he reports that the results of his videotaping for 3 days in June 2009 and 1 day in January 2010 show that Butterball, LLC and its predecessor, Carolina Turkeys, allowed all of their production employees to take extra minutes beyond their two scheduled 30-minute breaks for the entire time period from March 31, 2005 to the present

date. *See* Table 10 in Section 4 of the report by Dr. Fernandez at pages 19-20 of DE-376 filed under seal pursuant to DE- 379.[23] Based upon the application of the regulatory standards set forth above, the plaintiffs submit that they are entitled to partial summary judgment as to this contention and defense by Butterball.

As at least one federal court has held:

"Defendant is entitled to take disciplinary measures against employees who take excessively long breaks, but it cannot be permitted to offset such time against uncompensated work time in its attempt to satisfy the requirements placed on it under the FLSA. "[I]t would undermine the purpose of the FLSA if an employer could use agreed-upon compensation for non-work time (or work time) as a credit so as to avoid paying compensation *required* by the FLSA." *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 914 (9th Cir. 2004)(emphasis added)."

*Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F.Supp.2d 941, 953 (W.D.Wisc.2008)(citation in original)("*Kasten*"). Based upon this precedent, the regulatory standards that are set forth above, and the material identity between the facts involved in *Kasten* and the facts involved in this case[24], the plaintiffs contend that this Court should reject the defendants' Ninth and Nineteenth Defenses to the extent that they are based upon any setoff claim for extra minutes on break that the defendant suffered or permitted its production workers to perform as work. *See* 29 U.S.C. § 203(g)(definition of "employ" under the FLSA is "to suffer or permit to work"), and 29 C.F.R. §§ 785.13, 785.13, and 778.223.

D. **Partial Summary Judgment Should Be Entered for the Plaintiffs As to Defendant's Nineteenth Defense Under the NCWHA That It Is Entitled to Setoff Alleged Extra Time That Production Workers Were Allowed For Break on a Daily Basis When It Failed to Provide Any Written Notice to the Plaintiffs and the Class They Represent As to the Existence of Any Policy or**

---

[23] See footnote sixteen, supra.
[24] Dr. Jeffrey Fernandez was the defendant's time motion expert in both the *Kasten* case and in this case. *See Kasten*, 556 F.Supp.2d at 950-51.

**Practice to Allow Those Extra Minutes for Break As Required By N.C.Gen.Stat. §§ 95-25.13(2)-(3)**

Section 95-25.13(2) of the General Statutes of North Carolina requires that all employers "make available to its employees in writing or through a posted notice maintained in a place accessible to its employees, employment practices and policies with regard to promised wages." Another provision of the NCWHA requires all employers to "notify employees, in writing or through a posted notice maintained in a place accessible to its employees, at least 24 hours prior to any change in promised wages." N.C.Gen.Stat. § 95-25.13(3). The North Carolina Department of Labor (NCDOL) has promulgated regulations which define both the term "maintained in a place accessible" and the scope of "promised wages". *See* NCAC Tit.12 §§ .0803 and .0806. Under those regulations, "promised wages" includes all forms of wages as defined in N.C.Gen.Stat. § 95-25.2(16), and any policy or practice that may affect the rate, amount or payment of wages." 13 NCAC Tit.12 § .0803. The term "wage" is statutorily defined to include any conceivable type of payment or benefit that is paid or provided to an employee to compensate that employee for "labor or services rendered". *See* N.C.Gen.Stat. § 95-25.2(16).

In this case, there is no dispute that the employer did not provide any of its production employees with any written notice or "through a posted notice maintained in a place accessible to its employees" its employment practices and policies with regard to the extra minutes for both of their scheduled one-half hour breaks that the defendant allegedly allowed all production employees. Plaintiff's Exhibit 8 attached (Excerpts from the Deposition of Butterball, LLC by Karen Ingram on January 13, 2010, pp. 201-04); Plaintiff's Exhibit 9 attached (Excerpts from the Deposition of Butterball, LLC by Karen Ingram on July 28, 2010, pp. 119-120); Plaintiff's

Exhibit 162 attached (Excerpts from the Deposition of Butterball, LLC by Karen Ingram on March 25, 2008, pp. 61-63, 66-68, and 79-80); and Plaintiff's Exhibit 3 attached (Excerpts from the Deposition of Steve Swan on September 15, 2010, pp. 8-12, 101-102, and 107). The complex director for the defendant's Garner Chapel Road processing complex has admitted that payment for these extra minutes of break time was a practice that affected the rate, amount or payment of wages. Plaintiff's Exhibit 3 attached (Excerpts from the Deposition of Steve Swan on September 15, 2010, p. 107). Based upon this violation of the NCWHA, the plaintiffs contend that the defendant may not, pursuant to its Nineteenth Defense, claim those extra minutes as a set off against the donning and doffing time for which the defendant did not compensate the plaintiffs and the Rule 23(b)(3) class of workers that they have been certified to represent under the NCWHA.

This result should obtain for two reasons. First, the defendant's alleged practice of providing additional minutes for break beyond the scheduled 30-minute breaks certainly affected the "rate, amount or payment of wages." 13 NCAC Tit.12 § .0803. If that practice existed, the wages that the defendant paid for those extra minutes of break time constituted payment to the plaintiffs and their production co-workers for at least some of the time that those workers spent donning items of personal protective equipment ("PPE") or other gear and walking back to their stations on the production floor. *See Kasten*, 556 F.Supp.2d at 953 (denying credit for uncompensated work time for extra minutes provided beyond 30-minute break because the workers used that time to "don protective gear and to sanitize as required by defendant"); and *See* Plaintiff's Exhibit 162 attached (Excerpts from the Deposition of Butterball, LLC by Karen Ingram on March 25, 2008, pp. 61-65); and Plaintiff's Exhibit 8 attached (Excerpts from the

Deposition of Butterball, LLC by Karen Ingram on Jan. 13, 2010, pp. 193-203). Second, the defendant's violation of § 95-25.13(2) denied the plaintiffs and their production co-workers of the specific written notice of Butterball's alleged practice of providing additional minutes for break beyond the scheduled 30-minute breaks so that those workers could actually use those alleged extra minutes without fear of disciplinary sanction for returning to their stations on the production line well after the expiration of the end of the scheduled 30-minute break. *Id.*

   E.   **Partial Summary Judgment Should Be Entered for the Plaintiffs As to Defendants' Fourteenth Defense Under the FLSA and NCWHA That Time Spent Donning and Doffing Gear Which Plaintiffs Are Permitted to Don and Doff At Home or Otherwise Away From the Workplace Makes That Time *Per Se* Non-Compensable**

In the defendant's Fourteenth Defense the defendants allege that time spent donning and doffing any protective gear which plaintiffs are permitted to don and doff at home or herwise away from the workplace renders that time *per se* non-compensable under the FLSA and the NCWHA. Presumably, this defense is based upon the May 31, 2006 Wage and Hour Advisory Memorandum No. 2006-2 in which the then acting Administrator of the Wage and Hour Division advises Wage and Hour staff of his view that "donning and doffing of required gear is within the continuous workday only when the employer or the nature of the job mandates that it take place on the employer's premises." *See* Plaintiff's Exhibit 6 attached, p. 2 (copy of Wage and Hour Advisory Memorandum No. 2006-2).

   The plaintiffs submit that this informal interpretation of what constitutes compensable work should be rejected as a matter of law in favor of the multi-factorial analysis that other courts both within and without the Fourth and Eleventh Circuits have used to determine what constitutes compensable work in the donning and doffing context. *See, e.g., Hosler v. Smithfield*

*Packing Co.*, Case No. 7:07-CV-166-H, 2010 U.S.Dist.LEXIS 101779 at \*23-\*35 (E.D.N.C. M&R filed August 31, 2010)(copy attached), *aff'd*, 2010 U.S.Dist.LEXIS 101916 (E.D.N.C. filed Sept. 27, 2010)(copy attached); *Parker v. Smithfield Packing Co.*, Case No. 7:07-CV-176-H, 2010 U.S.Dist.LEXIS 101185 at \*22-\*35 (E.D.N.C. M&R filed August 31, 2010)(copy attached), *aff'd.*, 2010 U.S.Dist.LEXIS 101927 (E.D.N.C. filed Sept. 27, 2010)(copy attached); *Anderson v. Perdue Farms, Inc.*, 604 F.Supp.2d 1339, 1354-56 (M.D.Ala. 2009)(rejecting view of DOL expressed in Plaintiff's Exhibit 6 attached with respect to this issue, and citing cases). Under this multi-factorial analysis, the alleged fact that plaintiffs are permitted to don and doff their protective gear at home or otherwise away from the workplace does **not** render the time required to do so at the plant *per se* non-compensable. *Id.* Any defense like the defendant's Fourteenth Defense which is based upon this type of "single shot" analysis of work should be rejected as a matter of law.

  **F.** **Partial Summary Judgment Should Be Entered for the Plaintiffs As to the Eighth, Tenth, Eleventh, and Twelfth Defenses Alleged By Defendant**

  In its Eighth Defense, Butterball has alleged in ¶8 at page 10 of its Amended Answer that the plaintiffs' claims under the FLSA are barred to the extent that plaintiffs, or any other person on whose behalf plaintiffs seek to assert a claim, have submitted false and inaccurate time reports. Doc. 296, p. 10, ¶8. There is no evidence to support the defense that any specific workers "affirmatively misled the employer regarding the number of hours worked and the employer had no knowledge of the employee's actual hours." *See Curry v. High Springs Family Practice Clinic and Diagnosis Center, Inc.*, No. 1:08-cv-00008-MP-AK, 2008 U.S.Dist.LEXIS 99462, at\*11-\*12 (N.D.Fla. Dec. 9, 2008)("*Curry*")(copy attached in Doc. 357-3, pp. 13-22). Therefore, the Court should enter partial

44

summary judgment in favor of the plaintiffs as to the Eighth Defense.

In its Tenth Defense, Butterball has alleged in ¶10 at page 10 of its Amended Answer that any recovery by plaintiffs should be limited to the extent that plaintiffs have failed to mitigate any of the damages alleged in the Complaint. Doc. 296, p. 10, ¶10. Under relevant case authority, this is legally insufficient under the FLSA and the NCWHA. *Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F.Supp.2d at 1319 (striking same defense as legally insufficient as a matter of law); *Gonzalez v. Spears Holdings, Inc.,* Case No.: 09-60501-CIV-COHN/Seltzer, 2009 U.S.Dist.LEXIS 72734 at *7 (S.D.Fla. filed July 31, 2009)(copy attached in Doc. 328-2, pp. 5-8) (striking materially identical defense by defendant in FLSA action).

In its Eleventh Defense, Butterball has alleged in ¶11 at page 10 of its Amended Answer that the plaintiffs are not entitled to any requested relief according to the doctrine of unclean hands. Doc. 296, p. 10, ¶11. Under relevant case authority, the Court should grant partial summary judgment against the defendant with respect to this defense because there is no evidence to support the limited factual circumstances under which this defense may be available in a wage action under the FSLA and the NCWHA. *Groves v. Patricia J. Drury, M.D., P.A.*, Case No.: 2:06-cv-338-FtM-99SPC, 2006 U.S.Dist.LEXIS 62540 at *4-*5 (M.D.Fla. filed September 1, 2006)(copy attached in Doc. 328-2, pp. 2-4)(striking materially identical defense by defendant in FLSA action). *See also Curry v. High Springs Family Practice Clinic and Diagnosis Center, Inc.*, No. 1:08-cv-00008-MP-AK, 2008 U.S.Dist.LEXIS 99462, at *9 (N.D.Fla. Dec. 9, 2008)("*Curry*")(copy attached in Doc. 357-3, pp. 13-22).

In its Twelfth Defense, Butterball has alleged in ¶12 at page 10 of its Amended Answer that the plaintiffs' claims are barred, in whole or in part, by the doctrines of laches, waiver and/or

estoppel. Doc. 296, p. 10, ¶12. First of all, the defendant has not provided any admissible evidence to support this affirmative defense. Secondly, under relevant case authority, this affirmative defense is legally insufficient as a matter of law. *Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F.Supp.2d at 1319-20 (striking same defenses as legally insufficient as a matter of law); *Cano v. South Florida Donuts, Inc.*, Case No.: 09-81248-CIV-RYSKAMP/VITUNAC, 2010 U.S.Dist.LEXIS 8386 at *4-*5 (S.D.Fla. filed Jan.21, 2010)(copy attached in Doc. 328-2, pp. 9-11)(same holding); *Gonzalez v. Spears Holdings, Inc. d/b/a Executrain of South Florida*, *supra*, 2009 U.S.Dist.LEXIS 72734 at *8 (same holding); and *Groves v. Patricia J. Drury, M.D., P.A.*, *supra*, 2006 U.S.Dist.LEXIS 62540 at *3-*4 (same holding).

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the plaintiffs submit that the Plaintiffs' Motion for Partial Summary Judgment As to the Good Faith and Other Affirmative Defenses Alleged By Defendant should be granted in its entirety.

This the 19th day of November 2010.


/s/ Robert J. Willis
P.O. Box 1269, Raleigh, NC 27602
Tel: (919)821-9031 / Fax: (919)821-1763
E-mail: rwillis@rjwillis-law.com
NC Bar No.: 10730

Dan Getman & Matt Dunn
GETMAN & SWEENEY, PLLC
9 Paradies Lane, New Paltz, NY 12561
Tel: (845) 255-9370 / Fax: (845) 255-8649
dgetman@getmanlaw.com
mdunn@getmanlaw.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 19, 2010 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: Melissa R. Davis, L. Dale Owens, Stephen X. Munger, Robert Capobianco, Eric Magnus, Todd Van Dyke, and Joel T. Alexander.

This the 19th day of November 2010.

/s/Robert J. Willis
Attorney for Plaintiffs
P.O. Box 1269
Raleigh, NC 27602
Telephone: (919)821-9031
Fax: (919)821-1763
E-mail: rwillis@rjwillis-law.com
NC Bar No: 10730