LILIANA MARTINEZ-HERNANDEZ and )
ULDA APONTE, both individually and on )
behalf of all other similarly situated persons, )
                                       )

     Plaintiffs, )
                                       )

v. ) **ORDER**
                                       )

BUTTERBALL, L.L.C., )
                                       )

     Defendant. )

This matter is before the Court on Plaintiffs' motion in limine to preclude the expert report

and testimony of Defendant's expert, Dr. Jeffrey Fernandez, [DE-468]; Defendant's motion to

exclude the testimony of Plaintiffs' rebuttal expert, Dr. Francis Giesbrecht, [DE-458]; and Plaintiffs'

first and second motions to strike evidence of Defendant in violation of Rules 56(c)(2) and 56(e)

[DE-540 & 558]. The issues have been fully briefed and are ripe for decision.

## I.    Motions to Exclude Expert Reports and Testimony

### A.    Standard of Review

Expert testimony is governed by Rule 702, which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to
> understand the evidence or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or education, may testify thereto in
> the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts
> or data, (2) the testimony is the product of reliable principles and methods, and (3)
> the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. "Under Daubert and Rules 702 and 703 of the Federal Rules of Evidence, federal

judges are to act as gatekeepers to determine whether an expert's opinion is reliable and whether his

testimony will be helpful to the jury." *Sheffield v. West Am. Ins. Co.*, No. 7:08-cv-191-H, 2010 WL

2990012, at *3 (E.D.N.C. July 27, 2010) (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993)). There are five factors generally considered in assessing relevancy and reliability: "(1) whether the particular scientific theory 'can be (and has been) tested'; (2) whether the theory 'has been subjected to peer review and publication'; (3) the 'known or potential rate of error'; (4) the 'existence and maintenance of standards controlling the technique's operation'; and (5) whether the technique has achieved 'general acceptance' in the relevant scientific or expert community." *United States v. Crisp*, 324 F.3d 261, 266 (4th Cir. 2003) (quoting *Daubert*, 509 U.S. at 593-94). However, this list is not exhaustive and "the analysis must be 'a flexible one.'" *Id.* (quoting *Daubert*, 509 U.S. at 593-94; citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42 (1999) (concluding that testing of reliability should be flexible and that Daubert's five factors neither necessarily nor exclusively apply to every expert)).

### B. Analysis

#### 1. Plaintiffs' Motion to Exclude the Report and Testimony of Dr. Fernandez [DE-468]

Plaintiffs contend that Dr. Fernandez's report and testimony violate Rule 702 and should be excluded because (1) the testimony fails to help the trier of fact to determine a fact in issue; (2) the report fails to follow proper standards for an industrial time study; and (3) the report fails to follow proper statistical methodologies. Defendant contends that Dr. Fernandez's report and testimony are both relevant and scientifically reliable in conformity with *Daubert*. The Court agrees and concludes that Dr. Fernandez's report is both relevant and reliable and, thus, meets the requirements of Rule 702 and *Daubert*.

Plaintiffs first contend that Dr. Fernandez's report is not relevant. Defendant has pointed out that this Court "rejected a virtually identical attack on the admissibility of Dr. Fernandez's testimony

2

in Hosler v. Smithfield Packing Co., 2010 U.S. Dist. LEXIS 87883, *15 (E.D.N.C. Aug. 20, 2010 (Gates, M.J.), adopted Hosler v. Smithfield Packing Co., 2010 U.S. Dist. LEXIS 101776 (E.D.N.C., Sept., 24, 2010) (Howard, J.)." Def.'s Resp. at 2 [DE-523]. The Court, having considered the decision in *Hosler*, agrees and finds that it is relevant to the inquiry here. Plaintiffs in both this case and *Hosler* brought claims under the Fair Labor Standards Act ("FLSA") for failure to pay employees for all time worked, including time spent donning and doffing employer required clothing and gear. The *Hosler* defendant retained Dr. Fernandez to evaluate "the time it takes employees to don, doff, wash, and walk certain activities" at its meat processing facility. *Hosler*, No. 7:07-cv-166-H, Fernandez Expert Report at 1 [DE-352-5]. In the present case, Defendant retained Dr. Fernandez to evaluate "the time it takes employees to don and doff certain items, dip, sanitize, wash and to perform walking activities" at its poultry processing facility. Fernandez Report at 3 [DE-470-1]. In conducting the evaluations in both cases, Dr. Fernandez used an "elemental analysis" method, which "breaks down each activity into the smallest possible measurable task." *Compare id.* at 6, *with Hosler*, Fernandez Report at 6. Dr. Fernandez further explained the elemental analysis method as follows:

> In time and motion studies, activities are broken down into elements. Breaking the operation down into short elements and timing each of them separately are essential parts of time study. One of the best ways to describe an operation is to break it down into definite and measurable elements and describe each of them separately. The beginning and end point (breakpoints) of each element need to be specified (Barnes, 1980). Also, elements should be broken down into divisions that are as fine as possible and yet not so small that reading accuracy is sacrificed (Neibel and Freivalds, 1999; Barnes, 1980). "To be of value a time study must be a study of the elements of the operation, not merely a record of the total time required per cycle" (Barnes, 1980).

*Compare* Fernandez Report at 6, *with Hosler*, Fernandez Expert Report at 4.

In *Hosler*, as in this case, plaintiffs argued that Fernandez's elemental analysis could not be

3

reconciled with the continuous workday rule, as set forth in *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005). *Hosler*, Pls.' Mem. at 3 [DE-353]. The continuous workday rule provides that "the compensable workday begins with the first principal activity of a job and ends with the employee's last principal activity, but excludes time spent during a bona fide meal period.." *Perez v. Mountaire Farms, Inc.*, ___ F.3d ___, 2011 WL 2207110, at *4 (4th Cir. 2011) (citing *Alvarez*, 546 U.S. at 29). More specifically, Plaintiffs in this case argued that because Fernandez only measured the time to undertake certain discrete donning and doffing activities, he failed to account for "unproductive time," e.g., waiting in line to obtain smocks, opening and closing lockers, taking off personal shoes to don boots, etc., which they argue would be compensable under the continuous workday rule. Pls.' Mem. at 6, 9-15 [DE-469].

In a memorandum and recommendation adopted by Judge Howard, Magistrate Judge Gates rejected the *Hosler* plaintiffs' objections based on *Alvarez* and found that Fernandez's opinions were relevant, reasoning as follows:

> The time required for donning and doffing and the related activities at issue are not within the everyday knowledge and experience of a lay juror. Fernandez's opinions would provide the jury information on this issue and would therefore be helpful to it. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 946 (W.D. Wis. 2008) (finding Dr. Fernandez's expert report relevant in face of challenges like those brought by plaintiffs here). More specific issues on which Fernandez's opinions would shed light include whether the amount of time for which defendant paid employees for these activities was adequate, whether the amount of time spent on particular activities is so small they do not have to be compensated under the applicable law, and whether the amount of time claimed by plaintiffs for particular activities is excessively high. . . .
>
> Fernandez's opinions would be helpful and thereby relevant even if it is assumed, as plaintiffs contend, that it reflects only a portion of the time required for the various activities, not the full time required when they are performed on a continuous basis. At least in the present context, even purportedly incomplete information would be better than none. Plaintiffs will, of course, have the opportunity to point out any purported gaps in Fernandez's opinions at trial to assist the jury in evaluating it.

4

Plaintiffs' principal challenge to the reliability of Fernandez's opinions is also based on its purported noncompliance with the continuous workday principals of *Alvarez*. But **plaintiffs have not shown that the methodology used by Fernandez is prohibited by *Alvarez*. Rather, the methodology simply conflicts with plaintiffs' interpretation of *Alvarez*.** *Kasten*, 556 F. Supp. 2d at 946-47 (rejecting challenges to Fernandez's expert report on similar grounds). Inconsistency of an expert witness's opinions with the legal theory of an opposing party manifestly does not render the opinions unreliable. Such conflicts are inherent in our adversarial court system, particularly in an area of the law, such as this, which is still developing. . . . [Fernandez] is not being offered as an expert on the law applicable to this case and, indeed, he could not be.

*Hosler*, Aug. 20, 2010 Mem. & Recommendation at 7-9 (emphasis added) [DE-417]. Plaintiffs, in an attempt to distinguish *Hosler*, argued that Fernandez's own testimony at his deposition was that his report cannot be used to measure donning and doffing time "if the legal test in this case involves activities unmeasured by him." Pls.' Reply at 6 [DE-553]. Consequently, Plaintiffs contend that the conclusion in *Hosler* that "even purportedly incomplete information would be better than none," is not true in this case. The Court disagrees.

That Dr. Fernandez, the Defendant's expert, did not conduct his time study to fit Plaintiffs' theory of the case is not surprising. Furthermore, even if the Court ultimately finds that Dr. Fernandez did not measure every activity necessary to calculate the total time for which Plaintiffs should be compensated, that does not necessarily mean that his report has no relevance or usefulness in providing information related to the components of the compensable time calculation. Precisely as Magistrate Judge Gates recognized in *Hosler*, the present Plaintiffs will "have the opportunity to point out any purported gaps in Fernandez's opinions at trial to assist the jury in evaluating it." *Id.* at 8; *see also Kasten*, 556 F. Supp. 2d at 946 ("Plaintiffs' concerns regarding relevance are actually concerns regarding the content of the report. Such concerns are best addressed through cross examination before the trier of fact."). Furthermore, in its order adopting the memorandum and recommendation in the *Hosler* case, Judge Howard found that "[Dr. Fernandez's] opinions are both

5

relevant to the proceeding and would be helpful to the jury." Sept. 24, 2010 Order at 2 [DE-443]. Accordingly, the Court finds that Dr. Fernandez's report, including the time estimates of various donning and doffing activities, may be helpful in determining the amount of time for which Plaintiffs should have been compensated during the workday and is, therefore, relevant.

Next Plaintiffs contend that Dr. Fernandez's report fails to follow proper standards for an industrial time study. Plaintiffs argue, based on the rebuttal report of Dr. Robert Radwin, (1) that Dr. Fernandez used a "should take" methodology, rather than a "did take" methodology; (2) that Dr. Fernandez relied on simulations and theoretical walking distances rather than on measuring the actual time that employees take; and (3) that Dr. Fernandez did not select a random representative sample of employees to study. Even if the Court assumes that each of these assertions are true, they do not provide a basis to exclude Dr. Fernandez's report, but more appropriately go to its weight.

None of the issues raised by Plaintiffs implicate the five factors[1] that the Supreme Court set forth in *Daubert* for evaluating the reliability of expert testimony. To the contrary, this Court has already concluded in the *Hosler* case that Dr. Fernandez's methodology "has been tested and subjected to peer review and publication, has no high known or potential rate of error, and enjoys general acceptance within the field of industrial engineering." Aug. 20, 2010 Mem. & Recommendation at 9 [DE-417]. The *Kasten* court also rejected similar challenges to Dr. Fernandez's methodology, including that the size of the samples used were too small to be statistically significant and that it was error to rely on standardized walking times rather than actual walking times. 556 F. Supp. 2d at 946. The *Kasten* court concluded that the challenges did not

---

[1] (1) Whether the particular scientific theory can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community. *Daubert*, 509 U.S. at 593-94.

6

"address the reliability but the correctness of the report's conclusions, which are concerns best addressed through cross examination." *Id.* Furthermore, this Court in *Hosler* concluded that "[t]he elemental analysis methodology upon which Fernandez' opinions are based is also a reliable scientific methodology that is generally accepted within the industrial engineering community." Sept. 24, 2010 Order at 2 [DE-443]. Accordingly, the Court concludes that Dr. Fernandez's report should not be excluded for failure to follow proper standards.

Finally, Plaintiffs contend that Dr. Fernandez's report fails to follow proper statistical methodologies. For example, Plaintiffs argue, based on the report of Dr. Francis Giesbrecht, that Dr. Fernandez erred by adding median times to produce a representative number, because the representative number is not itself a mean, median, or mode. On this issue, Dr. Giesbrecht's report states as follows: "In Table E1 Dr. Fernandez combines medians of times required for elemental tasks to give estimates of times required for per shift allowances. Times are obtained by adding medians (medians multiplied by constants). Adding medians is not a standard statistical activity. Statistical properties of the results are not well known." Giesbrecht Report at 3 [DE-520-2]. Dr. Fernandez, at his deposition, admitted that some statisticians "don't like adding medians," but added that "some statisticians do" and explained that it was an issue of competing theory. Fernandez Dep. 233:11-15 [DE-459-2].

The Court finds that the concerns expressed in Dr. Giesbrecht's report regarding Dr. Fernandez's statistical methodologies do not render Dr. Fernandez's report unreliable, but instead go to the weight of the evidence. "The *Daubert* decision itself cautions that lower courts should not confuse the role of judge and jury by forgetting that 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof', rather than exclusion, 'are the traditional and appropriate means of attacking shaky but admissible evidence.'" *United States v.*

*Santiago Santiago*, 156 F. Supp. 2d 145, 148-49 (D. Puerto Rico 2001) (rejecting argument that evidence was inadmissible based on allegation of statistical invalidity) (quoting *Daubert*, 509 U.S. at 596). Accordingly, the Court concludes that Dr. Fernandez's report should not be excluded for failure to follow proper statistical methodologies.

In summary, the Court concludes that Dr. Fernandez's report is relevant and reliable as required by Rule 702 and *Daubert*. Therefore, Plaintiffs' motion to preclude the report and testimony of Dr. Fernandez [DE-468] is **DENIED**.

### 2. Defendant's Motion to Exclude the Testimony of Dr. Giesbrecht [DE-458]

Defendant contends that Dr. Giesbrecht's testimony should be excluded because it is not rebuttal testimony, but instead is an attempt to introduce affirmative expert testimony after the deadline to designate experts. Plaintiffs contend that the Court has already ruled on this issue by allowing the filing of Dr. Giesbrecht's report and that his report is not affirmative in nature and only critiques the statistical validity of Dr. Fernandez's report. Having reviewed Dr. Giesbrecht's report, the Court finds that it is in the nature of rebuttal testimony and will not exclude it.

Defendant first argues that Plaintiffs missed the deadline to designate an affirmative expert and are attempting to circumvent the Court's scheduling order by characterizing Dr. Giesbrecht's testimony as "rebuttal" testimony. The Court previously allowed Plaintiffs to designate a rebuttal expert on the statistical validity of Dr. Fernandez's report. May 21, 2010 Order at 26 [DE-390]. Therefore, the issue now before the Court is whether the report and testimony of Plaintiffs' expert overreaches the Court's previous order by offering affirmative evidence as opposed to rebuttal evidence.

In Dr. Giesbrecht's expert report, he stated that he was tasked to "to review Dr. Fernandez's

8

report and comment on the reliability and statistical validity of the conclusions" and concluded that "both the sample and the statistical calculations are inadequate." Giesbrecht Report at 1 [DE-520-2]. Dr. Giesbrecht raises five points in support of his conclusion: (1) the sample, i.e., number of visits to the plant, used by Dr. Fernandez was inadequate; (2) there are no standard deviations listed for Appendix E; (3) the calculations and conclusions on walk times are questionable; (4) the numbers in Table E1 reflect the added medians of times and adding medians is not a standard statistical activity; and (5) data on break times is inadequate. *Id.* at 1-4. Defendant argues that Dr. Giesbrecht generally agrees with Dr. Fernandez's conclusions, that he offers alternate opinions designed to support Plaintiffs' theory of the case, that he offers legal conclusions, that he manufactures "straw man" arguments to make it appear that he is rebutting Dr. Fernandez's opinions, and that he simply states that he does not know whether Dr. Fernandez is correct or incorrect on various points.

First, Defendant's objections that Dr. Giesbrecht generally agrees with Dr. Fernandez's conclusions and that he simply states that he does not know whether Dr. Fernandez is correct or incorrect on various points go to the weight of Dr. Giesbrecht's testimony and may be raised on cross-examination. Next, Dr. Giesbrecht's report itself does not offer affirmative testimony or legal conclusions. To the extent Plaintiffs attempt at trial to elicit such testimony from Dr. Giesbrecht, Defendant is free to object. Finally, with respect to the straw-man argument regarding medians, the Court disagrees with Defendant's characterization of Dr. Giesbrecht's report.

Defendant contends that "Dr. Giesbrecht falsely asserts that Dr. Fernandez testifies that a total of multiple medians is itself a median." Def.'s Mem. at 18 [DE-459]. Dr. Giesbrecht's report stated in relevant part: "In Table E1 Dr. Fernandez combines medians of times required for elemental tasks to give estimates of times required for per shift allowances. Times are obtained by adding medians (medians multiplied by constants). Adding medians is not a standard statistical activity.

9

Statistical properties of the results are not well known." Giesbrecht Report at 3 [DE-520-2]. Dr. Giesbrecht does not say that Dr. Fernandez testified that a total of multiple medians is itself a median. As discussed above, these experts simply disagree as to whether it is statistically sound to add medians. Therefore, the Court concludes that Dr. Giesbrecht's report is within the parameters of the Court's May 21, 2010 Order allowing a rebuttal expert related to the statistical validity of Dr. Fernandez's report, and Defendant's motion to exclude Dr. Giesbrecht's testimony [DE-458] is **DENIED**.

## II. Plaintiffs' Motions to Strike [DE-540 & 558]

### A. Standard of Review

Rule 56(c)(2) provides as follows with respect to facts asserted on summary judgment: "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." The Fourth Circuit Court of Appeals has explained the importance of the evidentiary standards found in Rule 56 as follows:

> Fed. R. Civ. P. 56 prescribes specific procedures to be followed in submitting evidence for or against a summary judgment motion. These procedures help assure the fair and prompt disposition of cases. They ensure further that neither side in a dispute can unfairly surprise the other with evidence that the other has not had time to consider. They also allow a district court to ascertain, through criteria designed to ensure reliability and veracity, that a party has real proof of a claim before proceeding to trial.

*Orsi v. Kirkwood*, 999 F.2ld 86, 91 (4th Cir. 1993). "[S]ummary judgment affidavits cannot be conclusory or based upon hearsay." *Christian v. Vought Aircraft Indus., Inc.*, No. 5:09-cv-00186-FL, 2010 WL 4065482, at *4 (E.D.N.C. Oct. 15, 2010) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir.1996) (internal citations omitted)).

### B. Analysis

Many of the issues raised in Plaintiffs' first motion to strike [DE-540] are also present in the

10

second motion to strike [DE-558]. Accordingly, the Court will address them contemporaneously.

Plaintiffs contend that certain evidence relied on by Defendant in its motion for partial summary judgment on claims outside of the two-year statute of limitations [DE-454], motion for partial summary judgment on good faith defenses to liquidated damages [DE-456], motion to decertify [DE-460], and response in opposition to Plaintiffs' motion for partial summary judgment as to good faith and other affirmative defenses alleged by Defendant [DE-527] is inadmissable as hearsay or violates *Daubert* and should not be relied on by the Court in resolving these motions. Defendant generally contends that the evidence is not offered to prove the truth of the matter asserted and, therefore, is not hearsay and that the *Daubert* objections both lack merit and are an untimely collateral attack on their expert. Additionally, Defendant contends that a motion to strike is not a procedurally appropriate method for challenging evidence in the context of summary judgment. Having considered the evidence at issue, the Court denies Plaintiffs' motions.

As an initial matter, the Court rejects Defendant's contention that the motions to strike are procedurally inappropriate. While Rule 56(c)(2) allows a party to "object" to material cited and does not expressly provide for striking material, there is precedent in this district for entertaining motions to strike as a form of objection to evidence presented at summary judgment. *Christian*, 2010 WL 4065482, at *5 (striking conclusory and contradictory statements that were not made in a separate affidavit from memorandum in support of summary judgment). Accordingly, the Court will not summarily deny the motions to strike on procedural grounds.

Next the Court will consider the parties substantive arguments. Plaintiffs have identified thirty eight statements that they contend are inadmissible, and the Court has grouped them for analysis based on the substance of the statement and/or the objection.

      **1.**      **Statements related to Department of Labor ("DOL") Policy (Pls.' First**

11

**Mot. to Strike ¶¶ 3, 7, 9, 12, 13 & 18 and Pls.'Second Mot. to Strike ¶¶ 1-11)**

Defendant asserts various statements in its briefs regarding DOL policy, and Plaintiffs object to those statements as hearsay. For example, Plaintiffs contend that a statement "as to what the U.S. Department of Labor ("DOL") 'has recognized' with regard to 'the use of 'plug time' such as this as an acceptable means of compensating employees for these activities'" is "inadmissible hearsay as to official DOL policy" and "is contradicted by DOL's January 15, 2001 Opinion Letter." Pls.' Second Mot. to Strike at 2, ¶ 1 [DE-558]. The complete text from Defendant's brief, in which the objectionable statement appears, is as follows:

> Many of the sources Mr. Lenaghan reviewed addressed the DOL's view on the compensability of donning and doffing time. For example, CT [Carolina Turkeys] received a memo authored by David Wylie dated November 28, 2005 titled "Supreme Court Issues Decision in Donning and Doffing Case: Many Questions Still Remain." (BB012283-BB012288, attached to DE-455 as Exhibit N.) The memo addressed "the options going forward." (Id.) One of the options presented by Mr. Wylie was "implement[ing] a system of 'plug time.'" (Id.) Mr. Wylie advised that the
>
> > **USDOL has recognized the use of 'plug time' such as this as an acceptable means of compensating employees for these activities.** The amount of time paid as so called 'plug time' should not simply be an arbitrary figure, but should approximate the actual and/or average time spent by employees in the donning, doffing and walking activities.
>
> (Id.) (emphasis added). (See DE-457, p. 10 at ¶¶ 28-29.)

Def.'s Resp. in Opp'n to Pls.' Mot. For Partial Summ. J. at 7, ¶ 16 [DE-527]. Defendant argued that this statement is not offered to prove the truth of the matter asserted,[2] but is instead offered to show Defendant's subjective state of mind, i.e., what it and its decision makers relied upon in making

---

[2] "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

donning and doffing policies. In opposing Plaintiffs' motion for partial summary judgment as to Defendant's good faith defense, Defendant argued that Plaintiffs failed to show an "absence of genuine issues of material fact concerning whether Butterball acted in good faith in conformity with and in reliance on written administrative regulations, orders, rulings, approvals, or interpretations of the Wage and Hour Division of the Department of Labor ("DOL") or any administrative practice or enforcement policy of the DOL." Def.'s Resp. in Opp'n to Pls.' Mot. for Partial Summ. J. at 2-3 [DE-527]. In support if its argument, Defendant enumerated 66 "Facts Relevant to Butterball's 29 U.S.C. § 259 Good Faith Defense." The disputed statement cited above and ten other disputed statements enumerated in Plaintiffs' second motion to strike are among these "facts."

In their reply, Plaintiffs stated that "[t]o the extent that Butterball has used Butterball's Response to limit the testimony cited in ¶¶ 1-11 of [Plaintiffs' Second Motion to Strike] to prove its **subjective** "state of mind" of the corporate defendant [sic], the plaintiffs concede that the defendant has met its burden to establish the testimony cited in those paragraphs is admissible for solely that purpose." Pls.' Reply at 3 (emphasis in the original) [DE-568]. In addition to Plaintiffs' apparent concession of the issue, it appears to the Court that the statement cited above was offered not as proof of DOL's alleged position on plug time, but was instead offered as evidence of what Gary Lenaghan, Defendant's Vice President of Human Resources, had reviewed in making his decision on compensation for donning and doffing activity. *See* Def.'s Resp. in Opp'n to Pls.' Mot. For Partial Summ. J. at 23-24 (citing disputed statements from Wylie memo regarding DOL's recognition of plug time as evidence of documents that it relied upon in implementing plug time) [DE-527]. Accordingly, the statement is not inadmissible hearsay.

Likewise, the analysis and conclusion are the same for the other statements related to DOL policy. *See id.* ¶¶ 18 (statement from Wylie's memo recounting information he received in a meeting

Case 5:07-cv-00174-H   Document 614   Filed 09/26/11   Page 13 of 21

with DOL officials); 22 (statement regarding DOL's settlement with Purdue on donning and doffing); 33 (statement from Lawson memo regarding settlements between DOL and various employers "blessing the payment of plug time"); 34 (statement from Lawson memo regarding position of courts and DOL with respect to generic vs. specialized gear); 35 (statements regarding DOL's position on plug time in the context of DOL's settlement with Tyson Foods); 36 (statements regarding Shoemaker's knowledge of DOL's settlement with Tyson Foods related to plug time); 37-40 (statements regarding DOL investigation of ConAgra donning and doffing compensation at Longmont, Colorado facility); *see also* Def.'s Mem. in Supp. of Mot. Partial Summ. J. on Good Faith Defenses to Liquidated Damages [DE-457] ¶¶ 31(statements from Wylie's memo recounting information he received in a meeting with DOL officials); 33 (statements regarding DOL policy regarding compensability for donning and doffing of certain items and the content of the DOL Field Operations Handbook Section 31b13); 92 & 93 (statement regarding Lenaghan's and Shoemaker's knowledge of DOL settlement with Tyson Foods); 101 (statements regarding ConAgra's donning and doffing policy and DOL's findings with respect to that policy).

Therefore, the Court finds that the disputed statements related to DOL policy (Pls.' First Mot. to Strike ¶¶ 3, 7, 9, 12, 13 & 18 and Pls.'Second Mot. to Strike ¶¶ 1-11) are not inadmissible hearsay insofar as they may be considered as evidence of Defendant's state of mind when making decisions regarding compensation.

### 2. Statements related to Dr. Fernandez's time study (Pls.' First Mot. to Strike ¶¶ 5, 6, 19, 21, & 22 and Pls.'Second Mot. to Strike ¶¶ 12-15)

Defendant cited a time study conducted by its expert, Dr. Fernandez, in support of its position that its plug time policy fully compensated employees for donning and doffing activities. *See, e.g.*, Def.'s Resp. in Opp'n to Pls.' Mot. for Partial Summ. J. at 29-30 [DE-527]. Plaintiffs have

14

essentially renewed their objections first raised in their *Daubert* motion [DE-468] and also set forth what they characterized in their second motion to strike as a "three-part factual basis for their objections to the Court's consideration of the inadmissible conclusions and opinions of Dr. Fernandez[.]" Pls.' Reply at 4 [DE-568]. Specifically, Plaintiffs contend that the statements related to Dr. Fernandez's time study are inadmissible because they are (1) based upon an unreliable statistical sample; (2) based upon a methodologically invalid comparison; or (3) are not relevant to any issue in the case. Pls.' Memo. in Supp. of Second Mot. to Strike at 3-22 [DE-559]. Defendant countered that any new arguments with respect to Dr. Fernandez that were not made in the original *Daubert* motion are untimely. Def.'s Resp. in Opp'n to Pls.' Second Mot. to Strike at 7 [DE-527]. Defendant also argued that whether a sample is statistically sufficient goes to the weight of the evidence and not its admissibility. *Id.* at 8. In their Reply, Plaintiffs emphasize that there is a "three-part factual basis" for their objections in addition to the renewed *Daubert* objections and that Defendant failed to address two of those arguments. Pls.' Reply at 4-6 [DE-568].

The Court has already rejected Plaintiffs' *Daubert* objections and, therefore, will not strike the statements related to Dr. Fernandez's time study based on those renewed objections. Furthermore, the Court finds that Plaintiffs additional objections do not provide a basis to strike the statements related to Dr. Fernandez's time study.

First, Plaintiffs argue that Dr. Fernandez's opinions and conclusions with respect to break allowances are based on an unreliable statistical sample. The Court has already found, *see supra* at 6-8, that Dr. Fernandez's report is reliable and that objections as to the statistical validity, e.g., the size of the statistical sample, go to the weight of the evidence. Plaintiffs also argue that Dr. Fernandez's report does not indicate that he had any personal knowledge of any break allowances allegedly provided and that his opinions and conclusions with respect thereto would be hearsay. Dr.

15

Fernandez's report stated in relevant part: "The company provides a plug allowance extra time beyond scheduled break allowances to employees at the Mt. Olive facility. This is based on *declarations* as presented in Appendix E and *observations* during site visits." Fernandez Report at 10 (emphasis added) [DE-470-1]. An expert may base his opinion on facts "perceived by *or made known to* the expert . . . ." Fed. R. Evid. 703 (emphasis added). Furthermore, Plaintiffs acknowledged that Dr. Fernandez collected break data as to some employees, although they contended that the number was too few to provide a statistically reliable result. Pls.' Mem. in Supp. of Second Mot. to Strike § III.B.1. at 4 [DE-559]. Accordingly, Dr. Fernandez's statements with regard to break allowances are not inadmissible hearsay.

Next, Plaintiffs argue that Dr. Fernandez's opinions and conclusions that most production workers were overcompensated for donning and doffing time are based upon a methodologically invalid method. Specifically, Plaintiffs contend that Dr. Fernandez's activity measurements were not based on continuous workday time measurements, but that his break measurements were based on continuous workday, resulting in an apples to oranges comparison. The Court has already rejected Plaintiffs' argument regarding the continuous workday rule, *see supra* at 3-6. To the extent that Plaintiffs are raising a new objection based on Dr. Fernandez's use of varying methods, the Court finds, consistent with its ruling on the Plaintiffs' *Daubert* motion, *see supra* at 6-7, that such an objection would not provide a basis to exclude Dr. Fernandez's report, but would more appropriately go to its weight. Furthermore, it appears that this argument could have been raised in Plaintiffs' *Daubert* motion and is, thus, untimely.

Finally, Plaintiffs argue that the "should take" measurements of Dr. Fernandez are not relevant to any issue in this case. The Court has already considered and rejected this argument in the context of Plaintiffs' *Daubert* motion, *see supra* at 6-7.

16

Accordingly, the Court will not strike the statements related to Dr. Fernandez's time study (Pls.' First Mot. to Strike ¶¶ 5, 6, 19, 21, & 22 and Pls.'Second Mot. to Strike ¶¶ 12-15).

### 3. Statements Related to Defendant's State of Mind (Pls.' First Mot. to Strike ¶¶ 1, 2, 8, 10, 11, 15-17 & 23)

Plaintiffs contend that various statements made by Butterball's officers are inadmissible hearsay because the declarants do not have personal knowledge of the facts and, thus, cannot be used to demonstrate Defendant's knowledge. As with the DOL statements, *see supra* at 12-14, Defendant contends that the statements are offered to show Defendant's subjective state of mind and are not inadmissible hearsay. In their reply, Plaintiffs concede that some of the disputed statements (Pls.' First Mot. to Strike ¶¶ 1, 10, 11, 17 & 23) are admissible "to prove the 'state of mind' of the corporate defendant[.]" Pls.' Reply § III.A.1. [DE-565]. However, Plaintiffs dispute the characterization of the remainder of the disputed statements (Pls.' First Mot. to Strike ¶¶ 2, 8, 15 & 16) as going to Defendant's "state of mind," because the statements do not expressly state that they are Defendant's "belief or perception" and are instead stated as fact. The Court disagrees.

A fair reading of the statements regarding the law on donning and doffing (Pls.' First Mot. to Strike ¶ 2, 8, 15 & 16), when considered in the context presented, is that they convey the beliefs of Defendant's predecessor, Carolina Turkeys, as to the state of the law. For example, the statements regarding the uncertainty of the law on donning and doffing (Pls.' First Mot. to Strike ¶ 2) are found in a section titled "Prior to the Supreme Court's Decision in <u>Alvarez</u>, Butterball Did Not Pay For Donning and Doffing Time Due to Uncertainty In The Law." Def.'s Mem. in Supp. of Mot. Partial Summ. J. on Good Faith Defenses to Liquidated Damages at 3 [DE-457]. In that section, Defendant sets forth facts regarding how employees were being paid prior to *Alvarez* and the company's rationale for its compensation policy. *Id.* ¶¶ 1- 5. For example, citing deposition testimony from two

17

of its officers, Defendant stated that "the Company was aware of what was going on in the industry and in particular, the legal uncertainty of whether time spent donning and doffing was considered compensable 'work' under the FLSA by the courts." *Id.* ¶ 3. It appears to the Court that this statement conveys the Company's belief regarding the state of the law and is appropriately considered as evidence of Defendant's state of mind. The analysis and conclusion are the same for the other disputed statements. *Id.* ¶¶ 8 (statement by Lenaghan that authors of trade publications and alerts on donning and doffing law were legal experts); 15 & 16 (statements by Lenaghan as to what constitutes compensable time or compensable donning and doffing activities).

Accordingly, the Court will not strike the disputed statements (Pls.' First Mot. to Strike ¶¶ 1, 2, 8, 10, 11, 15-17 & 23) insofar as they may be considered as evidence of Defendant's state of mind.

### 4.      Lenaghan's Statement Regarding Internal Time Study (Pls.' First Mot. to Strike ¶ 4)

Plaintiffs contend that a statement by Lenaghan that "Parker also included the time employees spend taping their sleeves closed" is inadmissible, because Lenaghan does not have personal knowledge as to what Carolina Turkeys or Parker knew with respect to what specific donning and doffing activities were timed as part of the internal time study. Defendant counters that Plaintiffs cited no evidence that Lenaghan's statement was not based on personal knowledge, that other sources regarding the details of the time study will be admissible at trial and, thus, that the disputed fact is admissible in some form as required by the civil rules, and that the statement would be admissible to, at minimum, show Lenaghan's belief as to what the time study included. In their reply, Plaintiffs argue that Defendant has the burden to show that the challenged evidence is admissible, that the other sources cited by Defendant do not contain the details in Lenaghan's

statement, and that the statement as written does not purport to allege state of mind, but instead fact.

As previously discussed with respect to other disputed statements, to the extent the statement is offered to demonstrate what Defendant, through Lenaghan, knew regarding the time study, it would be admissible for such a purpose. However, because it is not clear that Defendant intended the statement to be limited in such a way, the Court will consider whether it may be offered to prove the matter asserted.

Plaintiffs correctly point out that the burden of showing the admissibility of challenged evidence is on the proponent of the evidence. *See* Fed. R. Civ. P. 56(c) advisory committee's note ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."). Notwithstanding, the objector must offer some basis for the challenge, and here Plaintiff offers the report of Parker and the deposition testimony of Ingram to support its position that Lenaghan had no personal knowledge of the study. Parker's report does not indicate that Lenaghan was involved in the study. Def.'s Mem. in Supp. Mot. Summ. J. Statute of Limitations, Ex. I [DE-455-16]. However, Ingram's deposition testimony, cited by Plaintiffs, indicated that the idea for the study originated with Lenaghan in response to the *Alvarez* decision and that the study was conducted by a Human Resources Manager who reported to Lenaghan. *Id.*, Ex. U2 at 100:21-101:5 & 99:3-19 [DE-455-32]. This undermines Plaintiffs' claim that Lenaghan was not in any way involved in the time study or had any basis for personal knowledge of the study. Furthermore, while Plaintiffs correctly point out that the reports that Defendant maintains are admissible to prove the disputed statement do not actually contain the details of the disputed statement, *id.*, Ex. I & L [DE-455-16, 22], Parker could presumably testify to the details of the study, as the one who conducted it, and such testimony would be an admissible form of evidence to prove the disputed fact. Accordingly, the Court will not strike Lenaghan's statement regarding Parker's

report.

5.     **Statements Regarding *Alvarez* Decision (Pls.' First Mot. to Strike ¶ 14)**

Plaintiffs contend that statements regarding what the Supreme Court decided and "left open" in *Alvarez* are not admissible to prove the contents of the *Alvarez* decision. As with the statements regarding DOL policy, *see supra* at 12-14, the Court finds that these statements go to what Defendant believed about the *Alvarez* decision and that they were not presented to prove the truth of the matter asserted. The statements were prefaced by a sentence indicating that they were taken from a memo that Carolina Turkeys received from Wimberly Lawson titled "Questions and Answers About the Practical Impact of the Supreme Court's Decision in IBP, Inc. v. Alvarez" and the disputed statements themselves were direct quotations from the memo. Def.'s Mem. in Supp. of Mot. Partial Summ. J. on Good Faith Defenses to Liquidated Damages ¶ 36 [DE-457]. Further, two other related statements preceding the disputed statements, and within the same paragraph, were prefaced with "[t]he memo notes." *Id.* Based on the context in which the statements were presented, the Court concludes that these statements are presented as evidence of Defendant's state of mind and, thus, are not inadmissible hearsay.

6.     **Ingram's Statement Regarding Line Schedule (Pls.' First Mot. to Strike ¶ 20)**

Plaintiffs argue that the following two statements made by Karen Ingram, Defendant's Human Resources Manager, in her June 18, 2008 Declaration are inadmissible hearsay, because they are not based on her personal knowledge:

> 15. If a line begins operations before its scheduled time or ends operations after its scheduled time, then the supervisor changes the line schedule to reflect the time the line was operating.
>
> 16. If an individual begins work before or ends work after his or her normal scheduled time, then the supervisor changes the schedule to reflect the

time the employee begins and ends work.

Ingram Decl. ¶¶ 15-16 [DE-74-1]. Plaintiffs specifically argue that because Ingram is not on the production line she could not know what the Defendant's supervisors were doing with respect to line schedules during operations at the plant. Defendant counters that Ingram stated in her declaration that her statements were based on personal knowledge and that she has worked in Defendant's Human Resource department since 2005, which demonstrates sufficient personal knowledge of the scheduling and compensation policies at the plant.

Having reviewed these statements in the context of the Ingram declaration in its entirety, it appears to the Court that Ingram's statements go to Defendant's policy regarding line schedules, i.e. what Defendant told its supervisors to do and expected was occurring, and do not purport to cover every such instance of "what more than 100 supervisors were doing on three different shifts during the continuous operation" of the plant as Plaintiffs contend. Pls.' First Mot. Strike ¶ 20 [DE-540]. Accordingly, the Court will not strike Ingram's statements.

Therefore, based on the foregoing, Plaintiffs' first and second motions to strike [DE-540 & 558] are **DENIED**.

### III. Conclusion

Plaintiffs' motion in limine to preclude the expert report and testimony of Defendant's expert, Dr. Jeffrey Fernandez, [DE-468]; Defendant's motion to exclude the testimony of Plaintiffs' rebuttal expert, Dr. Francis Giesbrecht, [DE-458]; and Plaintiffs' first and second motions to strike evidence of Defendant in violation of Rules 56(c)(2) and 56(e) [DE-540 & 558] are **DENIED**.

This the 26th day of September, 2011.

DAVID W. DANIEL
United States Magistrate Judge

21