IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:07-CV-174-H(2)

LILIANA MARTINEZ-HERNANDEZ and
ULDA APONTE, both individually
and on behalf of all other
similarly situated persons,

    Plaintiffs,

    v.

BUTTERBALL, LLC,

    Defendant.

**ORDER**

This matter is before the court on defendant's motion to decertify plaintiffs' class and collective actions [DE #460]. Plaintiffs have responded, defendant has replied, and the time for further filings has expired. This matter is therefore ripe for ruling.

**STATEMENT OF THE CASE**

This is an action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA") and the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1 et seq. ("NCWHA"). Plaintiffs are current or former production line employees at the Mount Olive, North Carolina turkey processing plant owned and operated by defendant Butterball, LLC ("Butterball").

Plaintiffs assert that Butterball (or its predecessor)1 failed to compensate them for time spent donning and doffing protective equipment and traveling to and waiting at production lines and cleaning certain protective equipment (collectively "donning and doffing time"). Plaintiffs seek unpaid back wages, unpaid benefits, liquidated damages, attorney's fees, and other relief. Butterball denies liability.

On November 14, 2008, the court granted plaintiffs' motion for class and collective action certification and conditionally certified the following defined class for purposes of both plaintiffs' state-law claims and plaintiffs' FLSA claims:

> All current and former production line employees who worked at Butterball's Mount Olive turkey processing plant at any period of time from March 30, 2005, to the present and were paid on a "GANG" basis.

Approximately 342 plaintiffs have opted to join the FLSA action, and the Rule 23 class is comprised of an estimated 6,000 members. Following the completion of discovery, Butterball moves to decertify both the Rule 23 class and the conditionally certified FLSA class.

## STATEMENT OF THE FACTS

Butterball currently employs approximately 2,000 production employees in various departments at its Mount Olive facility.

---

[1]In October 2006, Carolina Turkeys acquired the Mount Olive facility from ConAgra Foods and changed the company's name to Butterball LLC.

In the Live Hang and Evisceration departments, employees slaughter the turkeys and provide an initial dressing of the poultry before additional processing. Employees in the Raw section of the plant complete the further processing of the uncooked poultry. Finally, there is the Ready to Eat department, where production employees make cooked turkey products. Most of the production employees are paid on a "gang-time" system, meaning that they are paid for the time their production line is operating less two unpaid thirty-minute breaks.

Production employees are required to wear certain protective equipment while on the production floor. However, the type of protective equipment worn varies depending on the department and the specific job held. In the Raw section, employees are generally required to wear a smock, hair net, ear plugs, and, if applicable, a beard net. Bump caps, plastic sleeves, safety glasses, aprons and steel-toed boots are required in some areas. Other protective equipment that may be worn in the Raw section includes arm guards, mesh gloves, Kevlar gloves, plastic gloves, rubber gloves and vinyl sleeves. In the Ready to Eat department, employees wear smocks, plastic aprons, disposable sleeves, hair nets, earplugs, steel-toed boots, plastic disposable gloves, cotton gloves, latex gloves and

3

safety glasses. Some employees are also required to wear steel gloves.

The amount of time spent donning and doffing protective equipment also varies. For example, some employees have to wait to get protective equipment, while others do not. In the Ready to Eat section, employees are required to sanitize their hands and aprons before starting work. Similarly, certain employees are required to sanitize their protective equipment at the end of their shift. When entering the cafeteria at break time, employees in the Ready to Eat section are required to doff and dispose of protective equipment, while employees in the Raw section are allowed to wear certain protective equipment during their breaks. In addition, some employees don certain protective equipment at home, while others do so in locker rooms or at their work stations before their shift begins.

## COURT'S DISCUSSION

### I. FLSA Collective Action

The FLSA permits employees to maintain an action for unpaid minimum wages and overtime pay against an employer on behalf of themselves and all others similarly situated. 29 U.S.C. § 216(b). An employee who desires to participate in a FLSA collective action must "give[] his consent in writing to become such a party." Id. There are two requirements for certification of a FLSA collective action. First, the members

4

of the proposed class must be "similarly situated". Id.; De Luna-Guerrero v. N.C. Growers Ass'n, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004). Second, the class members must "opt in" by filing their consent to suit. Id.[2]

Class members are "similarly situated" for purposes of § 216(b) if they "raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." Ellen C. Kearns, The Fair Labor Standards Act § 18.IV.D.3, at 1167 (1999). However, "their situations need not be identical. Differences as to time actually worked, wages actually due, and hours involved are . . . not significant to this determination." Id.

Certification of a FLSA collective action is typically a two-stage process. First, the court makes a preliminary determination whether to conditionally certify the class based upon the limited record before the court. The standard for conditional certification is fairly lenient and requires "'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan.'" Thiessen v. Gen. Elec. Capital Corp., 267

---

[2] This procedure is different from the procedure utilized for class actions under Rule 23 where potential plaintiffs are bound by the judgment unless they opt out.

5

F.3d 1095, 1102 (10th Cir. 2001) (quoting <u>Vaszlavik v. Storage Tech. Corp.</u>, 175 F.R.D. 672, 678 (D. Colo. 1997)). If the class is conditionally certified, the court typically authorizes plaintiffs' counsel to provide putative class members with notice of the lawsuit and their right to opt in.

The second stage of class certification normally occurs after discovery is complete and is based upon a more developed factual record. <u>Jimenez-Orozco v. Baker Roofing Co.</u>, No. 5:05-CV-34-FL, 2007 WL 4568972, at *6 (E.D.N.C. Dec. 21, 2007). At this stage, the court conducts a detailed review of the claims and defenses, considering the following factors: (1) the factual and employment settings of the individual plaintiffs; (2) whether defendant has presented individualized defenses; and (3) fairness and procedural considerations. If the court finds that the plaintiffs are not similarly situated, the action is decertified and the opt-in plaintiffs are dismissed without prejudice, allowing the named plaintiffs to proceed on their individual claims. <u>Hipp v. Liberty Nat'l Life Ins. Co.</u>, 252 F.3d 1208, 1218 (11th Cir. 2001) (quoting <u>Mooney v. Aramco Servs. Co.</u>, 54 F.3d 1207, 1214 (5th Cir. 1995)).

Butterball moves to decertify the conditionally certified class in this case on four separate grounds. First, Butterball argues that plaintiffs cannot show they are similarly situated due to a uniform policy denying compensation for donning and

6

doffing time because the evidence demonstrates that Butterball's policy is to compensate its employees for donning and doffing protective equipment. Second, Butterball contends that plaintiffs cannot show that any undercompensation experienced was suffered on a collective basis because the amount of compensation received by each individual plaintiff differs depending upon that particular employee's donning and doffing practices. In support of this argument, Butterball points out that employees "engage in different pre- and post-shift activities, . . . wear different protective equipment, spend different amounts of time walking and waiting and, most significantly experience different break practices, all depending upon the department in which they work." (Mem. Supp. Dfs.' Mot. Decertify [DE #461] at 20.) Third, Butterball maintains that its defenses will require a specific factual inquiry with respect to each plaintiff's claim "given that each individual [p]laintiff engages in different donning and doffing activities and receives different compensation for [donning and doffing time], all depending upon his or her department, supervisor, break practices, pre- and post-shift activities, and personal preferences." (Mem. Supp. Dfs.' Mot. Decertify at 25.) Finally, Butterball asserts that fairness and procedural considerations weigh in favor of decertification because prosecution of this action as a collective action will require

7

Butterball to defend separate "minitrials" as to each plaintiff. (Mem. Supp. Dfs.' Mot. Decertify at 26.)

The court is not persuaded by Butterball's arguments. The members of the conditionally certified class are similar in a number of respects. All are employees or former employees of Butterball's Mount Olive facility, employed on an hourly basis, who worked on a production line, and were required to wear certain protective equipment. Each complains that Butterball's use of a uniform "GANG" or scheduled-time compensation system deprived them of wages to which they were entitled under the FLSA, and each seeks substantially the same form of relief.

It is true that differences exist among the plaintiff class members with regard to the type of protective equipment required and the method in which they donned and doffed the equipment or were compensated for donning and doffing time. However, these differences relate primarily to the issue of damages, which ordinarily are insufficient to preclude class certification. See Haggart v. United States, 89 Fed. Cl. 523, 533-34 (Fed. Cl. 2009) ("[D]ifferences in the amount of potential damages among putative class members will not alone prevent class certification."). "Often those variations can be determined according to a universal mathematical or formulaic calculation, obviating the need for evidentiary hearings on each individual

8

claim." In re New Motor Vehicles Canadian Export Antitrust Litigation, 522 F.3d 6, 23 (1st Cir. 2008).

While the differences among the plaintiff class members may require individualized assessment of damages, they do not give rise to individual defenses that predominate over the class claims or require separate minitrials on the issue of liability. Additionally, Butterball has already lodged a number of broad-based defenses against the plaintiffs' the similarities among the plaintiff class members present a number of broad-based defenses, which Butterball has already lodged against the plaintiffs' claims (e.g., good faith, de minimis, donning and doffing not compensable work, and absence of willfulness).

Fairness and procedural considerations also weigh in favor of certification. Due to the modest amount of damages involved, decertification would likely mean that many of the class members would be financially precluded from pursuing their claims against Butterball. Allowing the plaintiff class members to litigate their claims in one action will lower their costs and promote judicial efficiency by allowing the court to resolve common issues of law and fact in a single lawsuit without the inefficiencies associated with a multiplicity of suits brought by individual plaintiffs. Accordingly, Butterball's motion to decertify is denied, and plaintiffs shall be allowed to continue

to prosecute their FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b).

## II. Rule 23 Class

Butterball also seeks decertification of the Rule 23 class. For certification as a Rule 23 class action, an action must meet four threshold requirements: (1) the class must be so numerous that joinder of all members is impractical ("numerosity requirement"); (2) there must be questions of law or fact common to the class ("commonality requirement"); (3) the representative parties' claims must be typical of the claims of the class ("typicality requirement"); and (4) the representative parties must be able to fairly and adequately protect the interests of the class ("adequacy-of-representation requirement"). Fed. R. Civ. P. 23(a).

The action must also satisfy one of the requirements set forth in Rule 23(b). See Fed. R. Civ. P. 23(b)(1), (2), (3). This court previously certified the plaintiff class on the ground that "questions of law or fact common to class members predominate over any questions affecting only individual members and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The court rejects Butterball's argument that factual differences among the putative class members preclude a finding

10

of commonality or typicality.  This case is far different from Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011), where the plaintiffs' employment discrimination claims were found to lack commonality and typicality.  In Dukes, there was no single decision, policy or plan at issue, and the defendant's liability to the individual class members depended on unique and subjective circumstances.  In contrast, this case involves a uniform policy or practice of compensating employees based on their scheduled shifts.  The primary issue with regard to all of the plaintiffs' payday claims is whether their donning and doffing of protective equipment and related activities constitutes "work" within the meaning of the NCWHA.  While plaintiffs' claims may involve some individualized assessment of damages, this is not a situation where "the functional equivalent of a full-blown trial on . . . causation" would be required for each putative class member.  Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 149 (4th Cir. 2001) (common issues do not predominate where there is an issue whether the various individual plaintiffs' damages were caused by the defendant or one of the contractors for whom defendant was not responsible).  The court, therefore, denies Butterball's motion for decertification of the Rule 23 class.

11

## CONCLUSION

For the foregoing reasons, Butterball's motion to decertify [DE #460] is DENIED.

This 29th day of September 2011.

MALCOLM J. HOWARD
Senior United States District Judge

At Greenville, NC
#31